Kelman v. Calhoun.

NELLIE KELMAN v. SIMEON H. CALHOUN, IMPLEADED WITH JOHN C. CALHOUN.

FILED JANUARY 2, 1895.    NO. 6161.

1. **Negotiable Instruments: BONA FIDES OF TRANSFER: BURDEN OF PROOF.** Where, in an action on a promissory note by an indorsee thereof, the defense interposed is fraud in the inception of the note, the burden is upon the plaintiff to prove that he is a *bona fide* holder for value; but where the only defense is the failure of consideration, the burden is upon the defendant to overcome the presumption that the note was transferred before due for value in the usual course of business. (*Violet v. Rose,* 39 Neb., 660.)

2. ―――: ―――: EVIDENCE examined, and *held* not to prove a failure of consideration or to overcome the presumption that the plaintiff is a *bona fide* holder of the note sued on.

ERROR from the district court of Otoe county. Tried below before CHAPMAN, J.

*Edwin F. Warren,* for plaintiff in error, cited: *Wortendyke v. Meekham,* 9 Neb., 21; *Dobbins v. Oberman,* 17 Neb., 163; *Sedgwick v. Dixon,* 18 Neb., 545; *Koehler v. Dodge,* 31 Neb., 328; *Helmer v. Commercial Bank,* 28 Neb., 47; *Cropsey v. Averill,* 8 Neb., 152; *Western Cottage Organ Co. v. Boyle,* 10 Neb., 409; *Coakley v. Christie,* 20 Neb., 509; *Bank of Orleans v. Barry,* 1 Denio [N. Y.], 116; *Suydam v. Westfall,* 2 Denio [N. Y.], 205; *Shriver v. Lovejoy,* 32 Cal., 574; *Missouri Loan . ink v. Garner,* 1 Mo. App., 200; *Bond v. Storrs,* 13 Conn., 412; *Dye v. Dye,* 21 O. St., 86; *Commercial Bank v. French,* 21 Pick. [Mass.], 486; *Buchner v. Liebig,* 38 Mo., 188; *Scott v. Shirk,* 60 Ind., 160; *Hamilton v. Vought,* 5 Vroom [N. J.], 191; 2 Randolph, Commercial Paper, sec. 998; *Goodman v. Simonds,* 20 How. [U. S.], 343; *Bank of Pittsburgh v. Neal,* 22 How. [U. S.], 96; *Murray v. Lardner,* 2 Wall. [U. S.], 110.

*M. L. Hayward, contra,* cited: *Shaw v. Clark,* 49 Mich., 384; *Lake v. Reed,* 29.Ia., 258; *Myers v. Bealer,* 30 Neb., 281; *National Bank of North America of Boston v. Kirby,* 108 Mass., 497; *Parsons v. Jackson,* 99 U. S., 434; *Newell v. Gregg,* 51 Barb. [N. Y.], 263; *Chouteau v. Allen,* 70 Mo., 339; *Dillon v. Scofield,* 11 Neb., 419; *Wilson v. Burney,* 8 Neb., 39; *Burr v. Boyer,* 2 Neb., 265; Parsons, Contracts, 17, 26 and note 3; Byles, Bills, p. 241; *Enterprise Distilling Co. v. Bradley,* 17 Ill. App., 509; *Aten v. Brown,* 14 Ill. App., 453; *Norman v. Waite,* 30 Neb., 302; *O'Leary v. Iskey,* 12 Neb., 136; *Courtnay v. Price,* 12 Neb., 192.

POST, J.

This was an action in the district court of Otoe county on a promissory note for $250 executed by the defendant in error and John C. Calhoun to John F. Callen, bearing date of March 10, 1890, and maturing sixty days after date. The petition is in the usual form in actions by indorsees of commercial paper, except that it is therein alleged that the note was transferred to the plaintiff by the payee for value before maturity in the usual course of business. The answer, after a denial of the transfer and the plaintiff's title to the note, contains the following allegation: "Defendant, further answering, avers that he is only a surety on said note and so signed the same, and the plaintiff had knowledge of this fact. Plaintiff has brought no one into court but this answering defendant; that said note was given by John C. Calhoun to one John F. Callen for a half interest in a certain advertising contract in Nebraska and Iowa; that said Callen represented to said John C. Calhoun that he understood the business and would devote his time and best efforts to make the same a success; that he had made large money in other similar contracts and would show said John C. Calhoun how to conduct and

manage said business so as to make it profitable, and that
by reason of such representations and agreements so made
to John C. Calhoun this defendant was induced and per-
suaded to sign said note as security, but that instead of
trying to work up business said Callen neglected the same
while with the said John C. Calhoun and shortly thereafter
went alone into Iowa and there worked up a profitable
business under said contract, and failed and neglected to
account to John C. Calhoun for his share of the profits
thereof, or to apply the same to the payment of said note,
it being the agreement that said note was to be paid out of
the said John C. Calhoun's share of the profits in said
business; that by the reason of the acts of said Callen
nothing was realized to said John C. Calhoun, and the
transaction was a fraud and a swindle on him and on this
defendant; that nothing can be made out of said Callen on
execution, and that his business keeps him constantly trav-
eling, and he is not a resident of this county, and that said
parties will be without remedy in the matter, except as they
are relieved from the payment of said note; that said Cal-
len pretended to indorse said note before maturity, and
that by said plaintiff's instructions the same was not pro-
tested at maturity, and payment has never been demanded
of the maker of said note, and that said Callen was by
the acts of said plaintiff relieved from his liability as such
indorser on said note."

The district court, on its own motion, gave the following
instruction, which is now alleged as error: "You are in-
structed that plaintiff having alleged in her petition that
defendant made, executed, and delivered the promissory
note in question to John C. Calhoun, for value received,
and that afterwards said Callen, before maturity of said
note, that is, before the same became due and payable, sold
and assigned, transferred, and duly indorsed the same to
plaintiff for value received, and the defendant, among other
matters of defense, having denied that John F. Callen for

value received and in good faith indorsed, transferred, and sold said note to plaintiff before maturity thereof, and having also denied that plaintiff is the real owner of said note, the plaintiff having interposed a general denial in reply to said answer, you are instructed that the burden of proof is upon the plaintiff to satisfy you by a fair preponderance of the evidence that she is the *bona fide* owner of said promissory note, that she purchased the same before it became due and payable, and that she paid therefor a good and valuable consideration, and unless you so find from a fair preponderance of the evidence, your verdict will be in favor of defendant." It must be admitted that the question here involved was somewhat obscured by the earlier decisions of this court; but in *Violet v. Rose*, 39 Neb., 660, the cases were examined and the rule thereof held to be that where in an action by an indorsee the defense presented is fraud in the inception of the note, the burden is upon the plaintiff to prove that he is a *bona fide* holder; but where the only defense is a failure of consideration, the burden is upon the defendant to overcome by proof the presumption of the common law that the paper was transferred for value before maturity and in the usual course of business. From an analysis of the answer in this case it is clear that the only reliance of the defendant is upon a failure of consideration, hence it is clearly within the rule above stated and the court accordingly erred in giving the instruction complained of.

2. From a careful reading of the proofs in the record we are constrained to add that in our judgment the verdict should have been set aside for another reason, viz., that the finding of the jury is so manifestly against the evidence as to call for interference by the court. The plaintiff, who was at the time in question an unmarried woman, possessed of money for investment, and living in the family of the payee, Callen, in the city of Omaha, testified that she purchased the note in controversy on or about the day of its date for $225. She is fully corroborated by Callen, who

is even more explicit, and states the transaction in detail, viz., that he received for the note $100 on the day of the transfer by check of the plaintiff, credit for the sum of $50, in which sum he was indebted to her for money advanced, and $75 in cash at a later date but within thirty days from the day of the transfer. She is supported likewise in all essential particulars by the testimony of Callen's wife and sister. In addition to the witnesses above named Mr. Lange, cashier of the bank at which the plaintiff kept her account, testified that she consulted him regarding the purchase of the note and the solvency of the makers, and further, that she placed it in his hands for collection some four or five weeks before its maturity, also, that a check for $100, drawn by her in Callen's favor, was paid by the witness a few days previous. He testified that the plaintiff's checks for smaller amounts had previously been cashed by Callen, which tends strongly to support the theory of the plaintiff that he, Callen, was at the date of the alleged transfer of the note indebted to her for money advanced. The only evidence claimed to be in conflict with the foregoing is that of the defendant, who testified to a conversation with the plaintiff in the presence of Mrs. Callen, the sister-in-law of the latter, about a month after the note matured. In that conversation the plaintiff, according to the testimony of the defendant, remarked that she had advanced money to Callen from time to time, but would not let him have any more money on the note until she knew it would be paid without a contest; that she was about to be married and would need her money. It has been said that mere verbal admissions should be received with caution. That such evidence "consisting, as it does, in the mere repetition of oral statements, is subject to much imperfection and mistake" (1 Greenleaf, Evidence, 200), although admissions deliberately made and precisely identified may afford proof of the most satisfactory character. (1 Greenleaf, Evidence, 200.)

Were the question simply one of veracity between the defendant and the five witnesses who testified for the plaintiff, corroborated as are the latter by the facts shown by the cashier, Mr. Lauge, we might see our way clear to sustain the finding of the jury; but when we remember that the judgment rests upon the defendant's recollection of an inadvertent remark of the plaintiff, completely at variance with her claim of title to the note then long past due, and the fact that she looked to him for payment, the verdict appears to be so clearly and palpably wrong as to present a proper case for reversal on that ground.'

We are likewise unable to perceive any substantial basis for the finding of a failure of consideration of the note. The inducements which led to the abandonment of the advertising scheme by John C. Calhoun, the principal of the note, are clearly set forth in the following communication, of which he is the admitted author:

"LINCOLN, NEB., April 13, 1890.

"*J. F. Callen, Esq., Omaha, Neb.*—FRIEND J. F.: The contents of this will doubtless surprise you. Have decided to give up the adv. business. Have been offered a good position—salary and expenses—and have accepted it to-day. Had a letter from Mandell in which he says they will do no advertising. I hoped to get on my feet through the Newcastle ad., but now that that has fallen through, I must take another means, and that means is something for which I am better adapted than for soliciting ads. I am no advertising man and never will be one, and you have been very kind to coach me this far. Address me Swedeburg, Neb. Hold until called for.

"Yours in haste,                    JACK."

That letter was the deliberate act of the writer, and is unmistakable evidence of the fact that he voluntarily abandoned the advertising venture for what was believed to be a more lucrative and congenial occupation. Being the first to violate the contract, he cannot, while in default of the

conditions thereby imposed, rely upon it for a cause of action or defense.    For reasons stated the judgment is

REVERSED.