WILLIAM McVEY V. STATE OF NEBRASKA.

FILED JANUARY 19, 1899.   No. 10412.

</div>

1. **Information**: CRIMES. In an information the language, "then and there * * * did make an assault upon one William P. Wilcox with a certain pistol loaded with gunpowder and one leaden bullet and then and there him * * * did shoot," in effect charges both the assault and the shooting to have been done with a pistol loaded as described.

2. **Malice.** "Malice," in its legal sense, denotes that condition of mind which is manifested by intentionally doing a wrongful act without just cause or excuse. It means any willful or corrupt intention of the mind. Following *Housh v. State*, 43 Neb. 163.

3. **Erroneous Ruling**: RETRACTION: REVIEW. A ruling, if erroneous, cannot be availed of if so seasonably retracted that by such ruling no prejudice could result to the party complaining of it.

4. **Witnesses**: INDORSEMENT OF NAME: INFORMATION. Testimony purely rebuttal in its nature may be given by a witness whose name is not indorsed upon the information.

5. **Instructions**: CONSTRUCTION: REVIEW. Instructions should be considered as an entirety, and where, without conflict, they correctly state the law which should govern the jury in its deliberations, no criticism will be available which counts upon the fact that one instruction covers but a part of the entire ground.

6. ———: ALIBI. Where an alibi and its effect were correctly stated in an instruction, no harm will be presumed from the fact that in

referring to it the court descriptively said that an alibi is a part of the defense.

7. ———: PRESUMPTION OF INNOCENCE: EVIDENCE. Where the court instructed the jury that the presumption of innocence continues with the accused until his guilt is established by the evidence beyond a reasonable doubt, *held* not prejudicially erroneous to refuse to further instruct that such presumption is a matter of evidence. Following *Bartley v. State*, 53 Neb. 310.

ERROR to the district court for Douglas county. Tried below before BAKER, J. *Affirmed.*

W. S. *Shoemaker*, for plaintiff in error.

C. J. *Smyth, Attorney General*, and W. D. *Oldham, Deputy Attorney General*, for the state.

RYAN, C.

The information upon which plaintiff in error was tried in the district court of Douglas county contained two counts. These were alike, except that in the first the felonious intent charged was to kill. In the second the intent was to wound. With plaintiff in error there was tried George Bradshaw, who was acquitted, as was also plaintiff in error on the first count, but he was convicted on the second. The offense in this count was thus charged: "That the said Willie McVey and George Bradshaw, on the said 21st day of May, 1897, then and there being in the county and state aforesaid, then and there, unlawfully, feloniously, and maliciously, did make an assault upon one William P. Wilcox with a certain pistol loaded with gunpowder and one leaden bullet and then and there him, the said William P. Wilcox, unlawfully, feloniously, and maliciously, did shoot, with intent then and there and thereby him, the said William P. Wilcox, unlawfully and feloniously to wound, contrary to the form of the statutes," etc.

It is urged on behalf of plaintiff in error that while the above language charges an assault with a certain loaded pistol there is no allegation descriptive of the weapon

with which the shooting was actually done. We think giving a fair construction to the language quoted it is equivalent to charging that with a certain loaded pistol the accused made an assault upon and shot William P. Wilcox. An indictment of the form above quoted may be found sanctioned in Warren's Ohio Criminal Law, page 260, and in Wharton's Precedents of Indictments and Pleas, 4th edition, page 253.

It is next insisted that there should not have been admitted any evidence showing an intent to rob, for, it is urged, section 16 of the Criminal Code does not cover that intent, but requires that the act shall be done maliciously, to constitute a crime. Having laid down these propositions counsel for plaintiff in error argues that there was no malice, for, to use his language: "The testimony of Dr. Wilcox shows that he did not know the plaintiff, had never seen him before, and, of course, had no trouble with him at any time before the alleged shooting." For a definition of the word "malice" as used in criminal codes counsel is referred to *Housh v. State*, 43 Neb. 163, wherein it is said that: "'Malice,' in its legal sense, denotes that condition of mind which is manifested by intentionally doing a wrongful act without just cause or excuse. It means any willful or corrupt intention of the mind."

On the trial there were efforts to show that subsequent to the time when the assault was made, counsel for plaintiff in error and other persons, under substantially the same conditions as to time and locality, had unsuccessfully attempted to recognize individuals. We shall not determine whether or not this kind of testimony was admissible, nor whether or not the alleged errors were saved by due exceptions, for, later, permission was given to introduce the proffered testimony, and all of it the plaintiff desired was admitted.

In the trial it was developed that when plaintiff in error commanded Wilcox to throw up his hands the latter struck him in the mouth with his fist. When Wil-

cox testified he stated that he found a contusion on the
lip of plaintiff in error after his arrest.  For the accused
it was testified that when Wilcox, for the purpose of
identification, made a physical examination of the ac-
cused, he did not remark the existence of an abrasion.
On rebuttal it was proper to contradict this testimony
as was done.  Again, on rebuttal it is insisted there was
error in permitting Mrs. Beesen, whose name was not on
the information, to testify that from her place of busi-
ness across the street she observed the movements of
the accused and of several parties who testified that
McVey was at his mother's residence until after the as-
sault took place.  To meet the testimony of these parties
Mrs. Beesen necessarily described acts of the accused
previous to the time of the assault and testified that
with the aid of the electric and gas light in the locality
she could see these parties with such clearness that after-
wards she identified them.  It is possible that some of
her testimony might have been offered before that of the
accused, but clearly the nature of the defense rendered
her testimony admissible.  Before the examination of
Mrs. Beesen began there was a general objection to her
testimony, except as to matters in rebuttal, and the court
announced that her testimony must in its nature be
strictly rebuttal.  She did not testify to seeing the shoot-
ing, nor to any fact from which it was inferable that the
accused did it.  The testimony she gave was strictly re-
buttal; hence it was not required that her name should
have appeared on the information.  (*State v. Huckins*,
23 Neb. 309; *Fager v. State*, 49 Neb. 439.) .

It is urged that there was error in giving the fifth in-
struction, for the reason that in said instruction there is
no requirement that the shooting be malicious to con-
stitute the offense charged.  In the first instruction there
is a summary of the second count of the information,
and in this summary malice is a very prominent factor.
In the third instruction there are the provisions of the
statute which McVey was accused of violating, and of

the offense charged, as has already been indicated, malice is an essential ingredient. The fifth instruction expressly requires proof of the wounding being done as charged in the second count of the information,—that is, maliciously. These instructions, taken together, could not have left the jury in doubt as to the necessity of showing "malice" as we have already defined that term, and the rule is that all the instructions should be read together. (*Bartley v. State*, 53 Neb. 310, 73 N. W. Rep. 744.)

In one instruction the court spoke of an alibi as a part of the defense of the accused, and this, it is claimed, left the jury free to infer that an alibi, if successfully established, amounted to but a fraction of a defense. We do not think this is reasonable. The court, in general terms, described the accusation, and in as general a way referred to the defense. The jury could not have understood the criticised reference to an alibi as differing from a statement that the defense was sought to be established by proving an alibi, for, after referring to an alibi the court correctly defined it, and it would be a reflection upon the intelligence of a jury to suppose, if the accused showed when the offense was committed he was absent from that locality, nevertheless, that it was possible for him to have committed it. When to the word "alibi" the court added the definition of that term, it was as though the instruction had stated that, as a part of his defense, the accused has introduced evidence to show that when the offense was committed he was absent and so could not have done that with which he is charged. No juror is so obtuse as to be unable to understand, that, when a person is accused of shooting another on the street, proof that the accused was, at the time, in a house at such distance that he could not have done the act charged, constitutes a complete defense; in other words, that if he could not have done the act, it must be presumed that he did not do it.

There was offered on behalf of the accused an instruc-

tion that if the proof with reference to an alibi left a reasonable doubt in the judgment of the jury as to the guilt of the accused, there should be an acquittal. This instruction was refused, and properly so, for on its own motion the court had given an instruction to the same effect.

It is urged that there was error in the refusal to give the third instruction asked on behalf of the accused. It was as follows: "In the absence of evidence to the contrary, the law presumes every one charged with the commission of a crime to be innocent, and this legal presumption of innocence is a matter of evidence, to the benefit of which the defendants are entitled in this case." In its second instruction the court used this language: "You are instructed that the defendants have been arraigned on said information and have pleaded not guilty, and the plea of not guilty by the defendants casts upon the state the burden of establishing by evidence all the material allegations in said information, as hereinafter explained to you, beyond a reasonable doubt, before you would be warranted in returning a verdict of guilty against them. The law presumes the defendants innocent, and this presumption continues throughout the trial until they are proven guilty beyond a reasonable doubt." In respect to an instruction which embodied the same principle as that found in the one requested and refused this court, in *Bartley v. State, supra,* said: "The request is in accord with the holding in *Long v. State,* 23 Neb. 33, 36 N. W. Rep. 310, where it was stated, following *Garrison v. People,* 6 Neb. 285, that the legal presumption of innocence was a matter of evidence to the benefit of which the accused was entitled. The same principle embraced in this request was laid down in the sixth instruction given in the case at bar by the court on its own motion, which reads thus: 'The law raises no presumption against the defendant. On the contrary the presumption of law is in favor of his innocence. This presumption of innocence continues through the trial

until every material allegation in the information is established by the evidence to the exclusion of all reasonable doubt.' (*Garrison v. People, supra.*)   The instruction in that case to which the defendant took exception read: 'And if, after you shall have carefully examined the evidence in this case, you shall be able to reconcile it with the innocence of the prisoner, it will be your duty, as no doubt it will be your pleasure, to acquit him.'   This court held that the language quoted fully recognized the rule that the legal presumption of innocence is a matter of evidence.   The twenty-first instruction in the case at hand is no less favorable to the accused than the one requested by him; hence he was not injuriously affected by the refusal to give the instruction tendered."   There is no necessity to further amplify the propositions above stated.   In the case at bar the court instructed the jury that the presumption of innocence continued throughout the trial until the accused were proved guilty beyond a reasonable doubt.   If the instruction had been given as requested, nothing would thereby have been accomplished, except that the jury would have had the theory given them that this presumption was in the nature of a matter of evidence; in other words, a different name would have been given the presumption, without modifying the weight which the jury were required to accord to it.

It is complained, finally, that the judge did not embody certain affidavits proposed as a part of the bill of exceptions.   Without considering whether in any case such a question could be decided by this court it must subserve every present purpose to say that the proposed amendments could have cut no figure in this case, for, in the view which we have taken, the question sought to be presented is immaterial.

There are no other questions argued in the brief, and the judgment of the district court is

AFFIRMED.