WILLIAM A. CATE v. STATE OF NEBRASKA.

FILED FEBRUARY 6, 1908.    No. 15,205.

1. **Criminal Law:** CONTINUANCE. The right of a defendant to continuance on account of the unforeseen and unavoidable absence of his counsel depends largely upon the nature of the case, his diligence, and the inability to procure other counsel in time properly to prepare for the trial, and, unless the discretion of the trial court in refusing the continuance has been abused, a reviewing court will not interfere.

2. ———: WITNESSES. DISCRETION OF COURT. Where a number of witnesses have testified to a fact which is not in dispute, the trial court may, in the exercise of a reasonable discretion, limit the number of witnesses testifying in regard to same.

3. ———: INSTRUCTIONS. Instructions must be construed together, and, even though a certain portion standing alone may not be technically correct, yet if, taken as a whole, they set forth the law applicable to the issues and the evidence they will be upheld.

4. ———: ———: INSANITY. Under the proofs in this case, *held* it was not error for the court to omit to instruct as to the defense of insanity, no instruction having been requested by defendant on that point.

ERROR to the district court for Nuckolls county: LESLIE G. HURD, JUDGE. *Affirmed.*

*Halleck F. Rose* and *Wilmer B. Comstock,* for plaintiff in error.

*W. T. Thompson, Attorney General, Grant G. Martin, J. T. Dysart* and *W. F. Buck, contra.*

LETTON, J.

At the January, 1907, term of the district court for Nuckolls county the defendant was convicted upon the charge of making an assault upon and stabbing one Lee Gress with intent to wound. From this judgment of conviction he prosecutes error to this court.

The information contained two counts; the first charging stabbing with intent to wound, and the second stabbing with intent to kill. The jury found him guilty of the charge in the first count, and acquitted him of the charge in the second count. ' `` ` defendant, Dr. William A. Cate, is a practicing physician at Nelson, Nebraska. The complaining witness, Lee Gress, is a farmer residing a few miles from that place. Cate had been the family physician for Gress, and had rendered services in that capacity for which a balance was owing him from Gress. The doctor was about to take a trip for the benefit of his wife's health, and was attempting to collect money due him to produce funds for that purpose. A day or two before the assault Mrs. Gress was in Nelson, and he spoke to her with reference to the account, asking her to give a note for the balance due. On the day of the assault he met Gress upon the street, told him he would like to speak with him, and led the way to the side window of a drug store on the level of the street, where Gress sat upon the window sill and the doctor stood or leaned at the side of the window. According to the witnesses for the state, the doctor asked Gress to pay his account or give a note for it, and when Gress refused to do this he applied an opprobrious epithet to Gress and struck or pushed his fist in Gress' face several times. Gress rose to his feet, threw off his overcoat and a blouse which he was wearing, and, just as this was done, was struck a violent blow with a pocket knife in the hands of the doctor. The knife penetrated his clothing, went through a pocket memorandum book, and entered his body, striking a rib near the region of the heart. He was almost immediately again struck a blow

in the side, which penetrated the pleural cavity.   Another
blow cut through the front of the cap which he was wear-
ing, and struck about half an inch above and to the right
of his eye.   Gress, in the meantime, had been trying to
strike Cate, but did not succeed until after these wounds
were inflicted, when he struck him a severe blow in the
mouth, knocking him to the sidewalk.   This terminated
the affray.   There were a number of persons standing near-
by.   Enoch Gress, a brother of Lee Gress, at the time the
quarrel began was standing with some others upon the
sidewalk toward the east end of the building.   He had a
pocket knife in his hand, with which he was figuring on
or boring into the wall.   When he heard the words applied
by the doctor to his brother, he moved toward the com-
batants, dropping his knife into his pocket as he did so,
but before he reached them Cate had been knocked down
by Lee.   When the doctor was striking Lee Gress with the
knife, Gress called out, "Somebody give me a knife," but
did not obtain a knife from his brother, and was unarmed
during the assault.   The evidence of the defendant's wit-
nesses, except that of the defendant himself, as to the essen-
tial points, varies but little from that of those of the state,
the variance apparently depending largely upon their dif-
ferent points of view of the affray.   Dr. Cate testifies that,
after he and Gress had had some words, while Gress was
sitting in the window, Gress arose and threw off his over-
coat; that at that time Enoch Gress came rapidly toward
them with a knife; that Lee Gress asked for the knife,
and, he thought, got it from Enoch; that Gress then struck
him a blow which dazed him; that he then went to fighting,
and that he has no recollection or knowledge of having
struck Gress with the knife, and that, if he did so, it was
done while he was in this dazed condition.   Some of the
witnesses for the defense say that, after the quarrel began,
Enoch went toward Lee, saying, "not to take that off of
him"; that Lee then took off his coat, told Enoch to give
him his knife, and that the doctor then said, "You will take
your knife, will you?   I have got a knife too," and the

doctor then took his knife out of his pocket, and the fight began. But on cross-examination no witness testified that Lee Gress ever had a knife, or ever received one from his brother, or that Enoch had a knife in his hand when he reached the point where Lee and the doctor were. From a careful reading of the evidence, we are convinced that it was ample to warrant the jury in coming to the conclusion that the defendant was guilty of a malicious assault upon Lee Gress with intent to wound him.

1. It is contended that the court erred in refusing to continue the case to permit of the attendance of one of defendant's counsel, who resided in Kansas City and who was detained by the sickness of one of his family. The information in this case was filed on March 28, 1905. In November of that year a trial was had at which the jury disagreed. From that time for more than a year the case was pending, and the record does not show the cause of the delay. On November 20, 1906, the case came up for hearing upon the application of the defendant for a continuance, and the case was continued until January 14, 1907. On the 15th of January, on defendant's application, the case was again postponed to January 23 "to allow defendant time to procure counsel to take the place of his attorney G. W. Stubbs," and the sheriff was directed to call 35 talesmen to appear at that time for the trial of the case. The record does not show upon what ground the case was continued from November 20 to January 14, except that it was at the request of the defendant. On the 23d of January he again applied for a continuance, upon the ground that Honorable G. W. Stubbs, of Kansas City, who was his leading counsel, was unable to attend the trial for the following reasons, shown by Judge Stubbs' affidavit, viz.: That his little daughter was taken sick before the 14th of January; that on the 14th the physician in attendance advised him that he might safely leave home; that he reached Nelson on Tuesday morning, the 15th, but was immediately advised that his child was much worse and called back to Kansas City; that her condition is

now such that he cannot at present leave her bedside, but that, if the trial is delayed two or three weeks, he believes he will be able to be present and assist in the trial; that the defendant could not procure other counsel between the time when it was apparent that he could not be present and the date that the case was set for trial, so that such counsel might be of any material value in the trial of the case. This application was overruled, and exception taken. It appears that Mr. H. H. Mauck, counsel for defendant, who tried the case, had been engaged as one of defendant's counsel for a long time; that the probability of Judge Stubbs being unable to attend the trial had been anticipated at the time of the application for the continuance on January 15, and that a week's continuance had been granted, in order to allow defendant to procure other counsel, if necessary. The evidence in the case was simple, consisting mostly of the statements of eye-witneses to the transaction, and, so far as the examination shows, all the facts bearing upon the question of the defendant's guilt or innocence seem to have been brought out at the trial by Mr. Mauck. It is no doubt true that, if a defendant has been surprised by the unforeseen and unavoidable absence of his counsel, which may result in serious prejudice to him, a new trial may in some cases properly be allowed; but this depends largely upon the nature of the case and the inability to procure other counsel in time for the trial, and, unless the discretion of the trial judge has been abused, a reviewing court will not interfere. The defendant knew that 35 talesmen had been summoned from the body of the county to attend for the trial of his case on the 23d, and that a continuance had been granted so as to allow him to procure other counsel in the event that Judge Stubbs was unable to attend. He apparently took no steps to avail himself of the time allowed him for this purpose, but preferred to take the chances of the little girl improving so that his counsel could attend, or, on the other hand, trying the case with Mr. Mauck, who was fully cognizant of the facts. We think no error was committed

by the trial court in overruling the motion for a further continuance.

2. Error is assigned on the refusal to allow the witness Schaffer to testify. Several witnesses were called by the defendant to testify to the fact that after the occurrence the defendant bore evidence of having received a severe blow upon the mouth, and also that there was an abrasion upon his cheek, apparently for the purpose of contradicting Gress' testimony that he only struck the doctor once during the affray. The record is as follows on this point: "Alma Schaffer is called as a witness by the defendant. Court: Is this witness on the same subject? Mr. Mauck: Yes, sir. Court: You need not call any more witnesses on that point. Defendant excepts." A number of cases have been cited which hold that a court may not arbitrarily determine the number of witnesses to be called upon a given point. As a general principle this may be said to be the law. The principle, however, is subject to many exceptions. Where a number of witnesses are called and have testified to a point that is not disputed, it is unnecessary to take up the time of the court with more of such testimony. The blow on the mouth was admitted, and the fact that there was an abrasion upon the doctor's cheek was not disputed by the state. It is true Gress testified that he only struck one blow, and that that blow knocked the doctor to the ground; but neither he nor any other witness for the state denied or disputed the fact that the doctor's cheek showed an abrasion afterwards. The matter was largely within the reasonable discretion of the trial court, and we think no error was committed; moreover, no offer was made to prove the facts as to which this witness was called to testify.

3. The definition of malice in instruction No. 11 is complained of. Instruction 11 is as follows: "Malice in its legal sense denotes that condition of the mind which is manifested by the intentional doing of. a wrongful act without just cause or excuse. It means any wilful or corrupt intention of the mind; and, as applied to this

case, if you shall be satisfied by all the evidence, beyond a reasonable doubt, that the defendant, without just cause or excuse, committed the offense charged in manner and form as charged in the information, then it was done with malice, or maliciously." This instruction is, in substance, identical with that approved in *Housh v. State,* 43 Neb. 161, and *McVey v. State,* 57 Neb. 471, and we see no reason to change the rule, though we think a better statement would have been "any wilful *and* corrupt intention of the mind," instead of using the disjunctive. This definition, or one substantially the same, has been adopted by many other courts. See 25 Cyc. 1667, notes 83, 84. The instruction must be read as a whole and considered in connection with the charge in the information, and, thus considered, it is a fair statement of the law applicable to the case.

4. Complaint is made of the giving of the third instruction, and of the supplemental instructions given at the request of the jury. Instructions must be construed together. In instruction 1, section 16 of the criminal code, the violation of which is charged in the information, is set forth, as also is section 17, relating to assault and battery. By instruction 3 the jury were told, in substance, that they may find the defendant guilty of malicious stabbing and cutting with intent to wound, as charged in the first count, or with intent to kill, as charged in the second count, the intent being the only difference in the two counts, or that they might find the defendant guilty of assault and battery. In the supplemental instructions they were told that section 16 is the law on which the information is based in both counts, and that under section 17, if they found the defendant not guilty of the greater charge, they will lawfully find him guilty, if the evidence justifies, of a less grade of the offense, as is explained in instruction 3. We find no error in this.

5. With regard to the complaint with reference to no instruction having been given as to the defense of insanity, we think counsel for t    defense were in nowise to blame

for not requesting an instruction attempting to excuse the assault upon that ground. While it may not have been error to give such instruction, if requested, the proofs can hardly be said to require the court to submit such defense or to warrant the jury in giving it much consideration.

6. It is urged that the court erred in excluding testimony as to the permanent character of the injury to the defendant, caused by the blow on the mouth. While the objection to the question asking Dr. Buffington what the effect of the blow upon Dr. Cate was as to the permanency of the injury was sustained, the witness immediately thereafter testified "that at the point of the depression there was an injury to the spine that remains." The state moved to strike this answer out, but it was permitted to stand. We think the court took the proper view in holding that the permanency of the injury inflicted by the blow upon the mouth had no relevancy to the issue which was being tried, but, even if it had any bearing, the evidence as to its permanent nature was eventually brought before the jury as just stated.

Lastly, it is urged that the evidence is insufficient to justify or excuse conviction of a felony. We have carefully read the entire bill of exceptions, and are forced to come to the conclusion that, however, much to be regretted the consequences to the defendant and to his family may be, the conviction must be sustained. It was apparently by the merest accident that the wounds inflicted on the body of Lee Gress did not reach a vital spot, and the defendant is to be congratulated that the result was not much more serious. The trial court seems to have carefully preserved all the defendant's rights, and we think no prejudicial error is to be found in the record.

The judgment of the district court is

AFFIRMED.