SAMUEL GREEN V. STATE OF NEBRASKA.

FILED MARCH 14, 1928. No. 25865.

*J. H. Grosvenor,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

THOMPSON, J.

An information against Samuel Green was filed in the district court for Hamilton county containing two counts, each in usual terms, the first charging him with the unlawful sale of intoxicating liquor to one Port Cool, and the second charging him with the unlawful possession of intoxicating liquor, each specifying the date as on or about July 23, 1926. Both counts charge misdemeanors, and are controlled by sections 3238 and 3288, Comp. St. 1922. *Dunlap v. State, ante,* p. 313.

On this information the defendant was duly arraigned and entered a plea of not guilty, at which time additional names were, by leave of court, added to those listed upon the information, among which was the name of the county surveyor of Hamilton county. The case was then tried to a jury, and verdict returned finding defendant guilty as to each count, upon which verdict judgment was entered sentencing defendant to imprisonment in the county jail of such county for 60 days on the first count, and to 30 days on the second, commencing on the expiration of the sentence on the first. To reverse this judgment error is prosecuted. The plaintiff in error will be hereinafter called defendant. There are seventeen different errors assigned as reasons why the judgment of the trial court should be reversed. These claimed errors will be designated as they are reached for consideration.

It is urged by defendant that the verdict is without support in the evidence. A careful reading of the bill of exceptions convinces us that this challenge, as to the first

count, is not supported by the record, and that the judgment as to it should be affirmed. However, as to the second count, we find that the verdict is not sustained by competent evidence, and the judgment as to it should be reversed.

The further challenge is presented by defendant: That this action was first lodged in the county court of Hamilton county; that defendant was arraigned and entered a plea of not guilty; evidence was introduced, at the close of which defendant was bound over to the district court, as is usual in cases of preliminary hearings, and entered into the necessary recognizance for his appearance in such district court; that the misdemeanors charged in the district court were the same as those charged in the county court, and the latter was possessed of jurisdiction to try and finally determine the matters thus involved and should have done so; that the proceedings had in the county court after the close of the evidence was without authority in law and void, and did not serve to dispossess the county court of jurisdiction or to vest the district court therewith. As to this challenge, it is sufficient to say that the record of the trial in the district court in no manner discloses that which is claimed to have taken place in the county court, save and except that the proceedings in the county court are made a part of the transcript in this present case; neither does the record here disclose that the proceedings had in the county court were in any manner called to the attention of the district court. Further, no objections were interposed on the part of defendant at the trial to the procedure had in this instant case, either by way of motion to quash, plea in abatement, or otherwise, and neither were the questions here presented in any manner called to the attention of the trial court in the motion for a new trial. As we said in *Weber v. Kirkendall*, 44 Neb. 766: "Primarily the office of a motion for a new trial is to afford the court an opportunity to correct errors in its own proceedings without subjecting parties to the expense and inconvenience of appeal or petition in error." Thus, it has become an elementary rule of our procedure

that "alleged errors of the trial court in an action at law, not referred to in the motion for a new trial, will not be considered in this court." *Pennington County · Bank v. Bauman,* 81 Neb. 782. Further, the record here shows that the information was read to defendant, to which he entered a plea of not guilty and proceeded with the trial, as heretofore indicated. The jurisdiction of the district court and the county court, as to the misdemeanors charged, was concurrent. Comp. St. 1922, sec. 9989, as amended by chapter 57, Laws 1925. Then, as we concluded in *Nelson v. State,* 115 Neb. 26: "It being determined that the district court has original jurisdiction of the offense charged, the effect of the so-called waiver of preliminary examination, disclosed by the record, cannot be considered at the present time for the reason that no plea in abatement was filed." Further, as we held in *Huette v. State,* 87 Neb. 798: "Under the provisions of section 444 of the Criminal Code (now section 10113, Comp. St. 1922) defects which might have been attacked by a motion to quash, or a plea in abatement, are waived when a defendant pleads to the general issue; and this is true as well when he pleads voluntarily as when he stands mute and a plea of not guilty is entered for him by the court"—following *Trimble v. State,* 61 Neb. 604. In the course of the opinion in the *Huette* case, we said: "Section 444 of the Criminal Code provides: 'The accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment or pleading in bar, or the general issue.' We have repeatedly held that defects which should have been raised by a motion to quash or a plea in abatement are waived when a defendant pleads to the general issue." In support of this statement many of our holdings are cited. Thus, we must conclude that such challenge does not present reversible error.

As to the alleged errors occurring at the trial in the introduction of evidence, and as to the other claimed errors presented, while each thereof has been considered, they are not likely again to occur if a new trial is had on the second

count, hence a discussion thereof would serve no useful purpose, and the same is omitted. However, it might be well to state that as to the challenge to the testimony of the county surveyor and the exhibits by him furnished in connection therewith, we are convinced that prejudicial error was committed by the introduction thereof, and the objection thereto should have been sustained, as such evidence was incompetent and its tendency was to raise an issue collateral to that under consideration.

It therefore follows that the judgment of the trial court as to the first count in the information is affirmed, and as to the second count is reversed, and the cause as to such second count is remanded for further proceedings.

AFFIRMED IN PART, AND REVERSED IN PART.

HOWELL, J.

I dissent from the affirmance of the conviction of Samuel Green on the first count of the information charging him with the illegal sale of intoxicating liquor on July 23, 1926, but concur in the reversal as to the second count charging illegal possession on the same day. This case involves a question of evidence which has not been determined by this court, so far as I know, and one that is important to the enforcement of legislation pertaining to constitutional prohibition. The nature of the thing prohibited by the Constitution, and the obvious difficulties of properly enforcing the law, are such that the legislature has enacted more meticulous laws than are ordinarily necessary to the prosecution of other statutory crimes not so perplexing. It is necessary to state the facts fully, but as briefly as possible.

Shortly before July 23, 1926, one Port Cool served a jail sentence in Aurora under "Jim" Howard, the sheriff of Hamilton county. On that date the sheriff gave $10 to Cool to make a purchase of liquor from Green, who had been suspected, but not previously arrested, of bootlegging. The sheriff did not see Cool go into Green's home place, nor until he came back to the highway. Cool testified to purchasing two quarts of intoxicating liquor for $6, receiving back and returning $4 to the sheriff. Cool was stopped

by the sheriff who took the liquor from Cool's car. The sheriff immediately went to defendant's house, knocked on the door and received no answer. He said he heard a shuffling noise in the house. Cool said when he went to defendant's house he knocked and received an immediate response. The sheriff, it then being about 9:15 o'clock p. m., returned to Aurora. About 11:30, the same evening, he left two men to watch the house all night. Not until about 5 o'clock the following morning did they see defendant, when he came out with a milk bucket. Later the sheriff and others made a thorough search of Green's house, other buildings, and Green's premises which included 80 acres of land. No liquors, or any indication thereof, were discovered. Later the search was extended to land of one Adams which adjoined the land of Green, separated by a two or three-strand wire fence of 30 years' standing as a division line. Some bottles, jugs, utensils and a keg were found about five feet from the fence on the Adams side, evidently used for holding intoxicating liquor; some liquor being found in one or more of them. No liquor and no container was found on Green's land. The prosecuting attorney employed the county surveyor to run a line for the purpose of establishing what is termed "the true line" between the lands mentioned. Without notice to, or conversation with, either the defendant or Adams, the surveyor fixed "the true line" far enough away from the fence to take in the ground upon which the liquor and containers were found. There was some slight testimony, not convincing, that automobile tracks, and possibly foot tracks, were traced from Green's barn over his land to within eight or ten feet of the fence.

Defendant had never been seen in the near vicinity of the find. Cool said he had made a number of prior purchases of intoxicating liquors from the defendant. In the course of trial, in response to an objection by defendant's counsel, the court said to the prosecutor: "Your witness has shown where he found them and your surveyor shows where the true line is." The surveyor made a map which

was received in evidence, over objection, showing the fence which was of more than 30 years' standing, marking the division line in red, and "the true line" by a dotted line, the distance between the two being 8' 1⅛", the strip thus formed being where the liquors and utensils were found. Upon the trial the court allowed the surveyor to testify to "the true line" and received the tell-tale utensils in evidence, over objections of defendant's counsel. The defense was two-fold: (1) Defendant testified he did not sell liquor to Cool; (2) he went to his brother's home, a short distance away, about 7 or 8 o'clock on the evening the sale was said to have been made at about 9 o'clock, remaining there until about 10:30, when he went home. His brother, then a candidate for sheriff of Hamilton county, and his wife, both testified, positively, with the semblance of truth, that defendant was at their home during those hours, their attention being challenged to that fact by Green's arrest during the next forenoon. On the actual sale there is the testimony of an acknowledged bootlegger against an alleged bootlegger. Further, on that point, there is the testimony of the brother and his wife that Green was not present when the sale is said to have been made. Had the case ended there, Green would have had a fair trial. Whether it would have resulted in conviction is problematical and reasonably doubtful.

Testimony of the sheriff and the surveyor was received to show that the defendant owned the land within the established "true line." The display of the utensils and the testimony of two reputable county officials were thrown into the balance. For that reason, and that alone, this court has unanimously reversed the conviction as to the possession count. In the majority opinion it is said:

"However, it might be well to state that as to the challenge to the testimony of the county surveyor and the exhibits by him furnished in connection therewith, we are convinced that prejudicial error was committed by the introduction thereof, and the objection thereto should have been sustained, as such evidence was incompetent and its

tendency was to raise an issue collateral to that under consideration."

I agree with that. Two or three apparently reputable business men of Aurora testified that they were present at the preliminary hearing, heard Cool testify, and that he then testified contrary to his evidence upon the trial. In this situation the court instructed the jury to "consider the testimony on that subject of an alibi with *all other evidence in the case.*" (Italics mine.) On reasonable doubt the jury were told if, after considering "all of the evidence in the case," upon either or both counts, the jury should not be convinced beyond a reasonable doubt, "your verdict shall be not guilty," etc.; and, in considering the credibility of witnesses and the weight to be given to their testimony, it "should take into consideration * * * all the evidence and facts and circumstances proved tending to corroborate or contradict such evidence," etc.

If it be said that defendant cannot complain of reversible error as to the selling count, because of evidence relating to the possession count, he did not request an instruction to the jury to disregard the evidence as to the possession count, there are two reasons why that is not correct: (1) The court admitted the testimony as bearing upon both counts; (2) the court regarded the surveyor's testimony as fixing, as a matter of fact, the "true line" between the lands of defendant and those of Adams, as is indicated by its remark quoted above. The court regarded the land where the liquors and utensils were found as being that of the defendant. Had Green owned that land, it would have been error to tell the jury to ignore testimony relating to possession.

We thus find this situation: The trial court admitted prejudicial and irrelevant testimony of the possession of liquors. It is unquestionable that no liquor or utensils were found upon the defendant's premises, tending to prove a sale. The jury found, from evidence the court said was proper to establish illegal possession, the defendant guilty thereof. The whole matter resolves itself into proving a

crime against accused, which he did not commit at all, in order to convict him of another crime which he may, or may not, have committed; whereas, had possession on defendant's premises been shown, it would have been proper evidence for consideration by the jury on the sale charge because it then would have a "causal relation or logical and natural connection" therewith. Possession of a supply of liquors by accused on his own premises are inter-related, and has a bearing upon potential sales. There is a distinction between proving a prior sale having no relation to a subsequent sale, wholly disassociated as to time and act, and proving preparation and equipment for making sales. One sale does not aid in the making of another. Preparation, equipment and supply directly lead to making sales. Had Green been charged with sale only, proof of possession of a supply by him, found upon his own premises, would be relevant. If shown that he had no supply, that would tend to prove he did not sell. Certainly proof of a supply on premises of another could not be attributed to accused.

The state had no right to make an illegal survey and compel Green to become the owner of his neighbor's land in order to convict him. Such benevolence as that is entitled to scant praise. In civil matters even, burdensome gifts may not be forced upon another. Green was forced to accept a donation of land he never owned or claimed. "Beware of the Greeks when they come bearing gifts." I have heard of "planting" liquor on land, but never before of planting land on liquor. Did the evidence disclose, even tend to disclose, the finding of intoxicating liquors on Green's premises, I would not favor disturbing the conviction on both counts, such possession having a legitimate bearing upon both. The possession proved was not admissible on either count. The only evidence on that point is the uninvited donation by the surveyor to Green of another man's land, against the desire of both, a defiant liberalism without right or title to support his trespass or pity. There has not been the semblance of a fair trial. Under

our system, no matter how depraved a man may be, he can demand a fair trial, which, if denied, gives him a right to appeal for constitutional protection. We may trace, by a descending scale, the range between goodness and depravity, through slight gradations, without finding any stage at which the protection afforded by the Constitution may be withdrawn. Juries are told innumerable times, the fact that the accused is charged with crime shall not be counted against him; they are the sole judges of the credibility of witnesses and, in weighing testimony, they may take into consideration all of the facts received in evidence under the guidance of the court and the circumstances appearing upon the trial. Unless appellate courts observe these rules, the farce of giving such instruction should be stopped. If it be the rule, as stated in *Jaynes v. People,* 44 Colo. 535, "that no person shall be convicted of an offense by proving that he is guilty of another" (that is the general rule with well-defined exceptions), it would be monstrous to convict a person of crime by proving a crime of another.

There is another reason why the conviction on the first count ought not to stand. Before a jury may convict it must be convinced beyond a reasonable doubt. It, not the court, determines the weight to be given to the testimony. What testimony? That which the court receives, and, of course, it receives only such as it wants the jury to accept. The court invites the jury to consider all it admits. It was to consider what the surveyor said about the results of his survey and the "true line" between the lands involved. Without believing that testimony it could not have convicted Green on the second count. Having believed it, of course Green was convicted. While the jury was weighing the word of accused and his witnesses against that of Cool, the testimony of the surveyor was pitted against that of Green. The surveyor was a public official for whom, no doubt, members of the jury had voted and in whose honesty they believed. Green said he did not own to the line. The surveyor said he did. Thus the accused

and his testimony were put out of the way—*hors de combat*—by a blow from behind. This brings us to a consideration of the relevancy of testimony, of a causal, logical and natural character, having relation to crimes charged. In *State v. Routzahn*, 81 Neb. 133, 138, this court quoted with approval the following language of the supreme court of Minnesota:

"But, reduced to its narrowest compass, the true rule is that evidence of the commission of other crimes is admissible when it tends corroboratively or directly to establish the defendant's guilt of the crime charged in the indictment on trial, or some essential ingredient of such offense, * * * or is a part of a common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to establish the other."

*Casteel v. State*, 151 Ark. 69, was a prosecution for manufacturing intoxicating liquors. Evidence that accused had liquors on his premises, concealed near his home, after the time of the alleged offense, was held proper, as tending to show possession of a still and of manufacturing. There is an analogy between possession of liquor and footprints as evidence. Both are competent, provided the accused is connected therewith. There was evidence in the case at bar of dim automobile tracks and of signs of footprints leading from Green's farm to within eight or ten feet of the fence near where the liquor and utensils were located. There was no effort to prove, except by suspicion, that they were made by Green.

In 8 R. C. L. 183, sec. 175, the author states: "Mere evidence of footprints alone, unconnected in any way with the defendant by means of comparison or otherwise, is not admissible."

Syllabus 3 in *Kinnan v. State*, 86 Neb. 234, reads: "The admission of evidence of the finding of footprints in the corn field where it is alleged the unlawful act occurred, not shown to have been made by any shoes ever worn by the defendant, and not connected with him in any way

except that they lead in the direction of his home, held reversible error."

*State v. Burch,* 195 Ia. 427, states the rule to be: "In *Kinnan v. State,* 86 Neb. 234, 27 L. R. A. n. s. 478, 21 Ann. Cas. 335, it was held that evidence of footprints was erroneously admitted where there was no testimony tending to show that the footprints were made by the defendant." To the same effect *Heidelbaugh v. State,* 79 Neb. 499.

*Dorsey v. State,* 25 Ariz. 139, illustrates the rule relating to possession: "The fact that the gun was in appellant's house soon after the robbery did not, under the circumstances, show possession in him, since it was found in the room leased·to and occupied by Hatton and Briley who were in possession of the property in this room not belonging to the owner of the house, and who, *because of this possession, were presumed to be its owners and to have taken it there themselves.*" (Italics mine.) The syllabus reads: "The finding of a gun taken from prosecuting witness (by one who robbed him) in a room of defendant's house, * * * held not to show that defendant had possession of the gun." Fitting the above to the case at bar we may word it thus: "The finding of intoxicating liquors and containers on land of another than defendant, and occupied by the other, does not show that defendant had possession of them."

Finding liquor on the premises of an accused, without knowledge thereof, would not render him liable to prosecution; but, "possession having been established, the presumption of knowledge follows as a legal consequence attached to it." *People v. Burbank,* 234 Mich. 600.

*Hawes v. State of Georgia,* 258 U. S. 1, states: "The existence upon land of distilling apparatus, consisting of the still itself, boxes and barrels, has a natural relation to the fact that the occupant of the land has knowledge of the existence of such objects and their situation." To the same effect is *Larsen v. State,* 190 Wis. 606.

*State v. Gates,* 52 N. Dak. 659, holds that the finding of liquor in a part of a rooming-house not under control of

accused would not be even a circumstance to be considered by the jury in determining his guilt or innocence.

In *State v. Lipman,* 163 Minn. 431, Lipman was prosecuted for unlawful sale of intoxicating liquors. The testimony was conflicting as to the sale, which, it was alleged, was made on August 27, 1924. On the following September 27, officers searched premises of defendant and found bottles of liquor hidden in a woodpile, which was proved upon the trial over defendant's objection. The court said: "It was relevant and admissible as showing a supply of liquor within defendant's reach, affording him the means of committing the crime. The proof was admissible as corroborative of the testimony as to the illegal sale charged in the complaint. *People v. Petrovich,* 67 Cal. App 405; 33 C. J. 752; *State v. Legendre,* 89 Vt. 526; *State v. Clark,* 155 Minn. 117."

In *State v. Work,* 47 S. Dak. 649, it was held proper to show sales as corroborative of "keeping and storing intoxicating liquors." See, also, on this point, 16 C. J. 606, sec. 1174; *Cooper v. State,* 12 Ga. App. 561; *Myers v. State,* 52 Tex. Cr. Rep. 558. In the last cited case the court said: "Certainly, if appellant could prove that he had no whiskey and never had had or handled any whiskey, this would be a strong circumstance to corroborate his statement that he did not sell appellant any whiskey. Then, with the same degree of rationality does it not follow that, if the state can prove that appellant has in his possession a large quantity of intoxicants, this fact should be admissible for the purpose of corroborating the states witness and rendering probable the fact that he did not sell the whiskey."

If there be any doubt about the admissibility of evidence showing possession of liquors as bearing upon the guilt of one charged with illegal sale only, it seems that section 3247, Comp. St. 1922, as amended by section 1, ch. 94, Laws 1923, would remove it. That section provides, in effect, if not in direct terms, that possession, "in and of itself," under certain conditions, shall constitute *"prima facie* evidence that such liquor was kept by such person

with the purpose of unlawful sale." Section 10186 Comp. St. 1922, has no application to the situation in this case. In *Dibello v. United States*, 19 Fed. (2d) 749, evidence of liquors found in the basement of a building owned by accused was held proper under the doctrine that "things connected with the crime as its fruits or as the means by which it was committed" may be shown. Many other authorities along the same line exist. None have been shown, and I find none, to the contrary.

It may be, and is readily conceded, that evidence of a separate, independent and unrelated crime is not admissible to prove another. It may be, and it is readily conceded, that one who is charged in two counts with two separate, independent and wholly unrelated offenses, must request an instruction that the jury do not consider the evidence relating to one crime as proof of the other, before he can claim error. If that were the case at bar the majority opinion would be correct. But, as hereinbefore stated, had Green been charged with selling only, proof of a supply of intoxicating liquors on his own premises would have been admissible. It would have been error for the court to have instructed the jury to disregard the evidence relating to possession, provided the possession was that of Green, or the liquor was located on his premises.

From the foregoing, it would seem the conviction on both counts should be set aside.

Note—See Criminal Law, 16 C. J. 159 n. 79, 17 C. J. 87 n. 43, 370 n. 36—Indictments and Information, 31 C. J. 871 n. 31—Intoxicating Liquors, 33 C. J. 618 n. 88, 752 n. 13.