GERTRUDE IRENE FISHER, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

47 N. W. 2d 349

Filed April 12, 1951. No. 32875.

*Edward E. Carr,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Dean G. Kratz,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAP-PELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Plaintiff in error was charged with, tried for, and convicted of the crime of manslaughter. She was adjudged to be confined in the State Reformatory for Women. A motion for a new trial was denied and she has brought the record of her conviction and sentence to this court for review.

The information alleges that Gertrude Irene Fisher, defendant and plaintiff in error, frequently and unlawfully from about February 1, 1949, to and including February 4, 1950, struck and whipped Hilbert Eugene Fisher with a wood ruler and stick and thereby caused his death on February 8, 1950.

It is said that there was error in not sustaining a motion of defendant made before the commencement of the trial to quash the jury panel. The basis of the motion was that after the members of the jury panel were in North Platte attending court and shortly before the commencement of the trial there was published in a daily paper of that city a statement made by the county attorney of the county and read by the jurors when they knew the trial of the case was about to begin to the effect that: "A coroner's jury * * * rendered the decision that 'Hilbert Eugene Fisher came to his death as the result of most inhuman beating administered by his mother, Bertrude (Gertrude) I. Fisher, during the past several months, hastened by malnutrition'"; that a similar statement was published in an Omaha daily paper circulated in North Platte the day before the trial began; that there were many other partly untrue, misleading, inflaming, sensational, and prejudicial statements published in a North Platte daily paper and circulated throughout Lincoln County during more than a month before the trial; and that they contained statements said to be facts indicating the guilt of the de-

fendant of causing the death of her child by inhuman beating and starvation. Many of the publications complained of were offered in support of the motion and appear in the record.

There is no proof that any juror read, knew the contents of, was influenced by, or prejudiced against the defendant because of any of these publications. The claim of error is predicated on an assumption that the jurors read the matters published and were influenced, prejudiced, and disqualified thereby. This assignment is wholly unsupported. Opportunity for prejudice or disqualification is not sufficient to raise a presumption that they exist. § 29-2006, R. R. S. 1943; Ringer v. State, 114 Neb. 404, 207 N. W. 928; Holt v. United States, 218 U. S. 245, 54 L. Ed. 1021, 31 S. Ct. 2.

The reception in evidence against objection of defendant of pictures of the body of the deceased taken after death and their reproduction on a screen during the trial in the presence of the jury are discussed in the brief of defendant as reason for reversal of her conviction. It is claimed they had no tendency to establish guilt or innocence, and that they were unusually ghastly and gruesome and were effective only to incite the emotions and inflame the passions of the jury to the prejudice of the defendant. This contention cannot be examined and determined because of the absence of objection to the ruling of the trial court in this regard in either the motion for a new trial, the petition in error, or the assignments of error in the brief of defendant. Luster v. State, 142 Neb. 253, 5 N. W. 2d 705; Scavio v. State, 144 Neb. 881, 15 N. W. 2d 50; Green v. State, 116 Neb. 635, 218 N. W. 432.

The sheriff and the deputy sheriff of Lincoln County and a member of the Nebraska Safety Patrol testified on the trial as witnesses for the State. Defendant complains that the court did not inform the jury of the rule of law that when any person employed to procure evidence against the accused testifies for the State, the

jury should be instructed that in weighing the testimony of such witness it should exercise greater care and subject his testimony to closer scrutiny than in a case of a witness who is wholly disinterested. Sandage v. State, 61 Neb. 240, 85 N. W. 35, 87 Am. S. R. 457. Public officers are not generally within the class of persons to whom this rule is applicable. .Barnes v. State, 124 Neb. 826, 248 N. W. 381. Defendant did not request such an instruction. It is not obligatory upon the court, in the absence of a request, to give a cautionary instruction of this character. Clark v. State, 151 Neb. 348, 37 N. W. 2d 601.

Defendant put in issue her character by evidence of witnesses examined on her behalf that she was and had been a person of good reputation. The State did not attempt to dispute the proof in this particular. An instruction on this subject tendered by defendant was refused by the court, but the substance thereof, to the extent it was a correct statement of law, was included in the charge to the jury. This was permissible procedure. Smith v. State, 153 Neb. 308, 44 N. W. 2d 497. The part of the instruction earnestly condemned by counsel for defendant is the following: "* * * when, after giving evidence of good character due weight, the proof still shows the accused to be guilty beyond a reasonable doubt, such evidence of good character is unavailing." The instruction of the court in reference to the consideration the jury should give to evidence of good character of the defendant has been in all essential respects approved by this court (McDougal v. State, 105 Neb. 553, 181 N. W. 519) and by the courts of many other jurisdictions. Annotation, 68 A. L. R. 1068. A fault of the tendered instruction was the singling out and over-emphasis of the evidence of good character and the implication that it might, when considered by itself, be sufficient to create a reasonable doubt that would not otherwise exist. Evidence of good character should be considered by the jury, not by itself, but in con-

nection with all the evidence in the case. Sweet v. State, 75 Neb. 263, 106 N. W. 31; State v. Dowell, 47 Idaho 457, 276 P. 39, 68 A. L. R. 1061. The court did not err in refusing the requested instruction. It properly instructed the jury in this regard.

Complaint is made of the failure of the trial court to instruct the jury as to the mental status of the defendant to the effect that if at the time of the act charged against her she was suffering an aberration of mind of a nature and to a degree that she was not conscious of her act and because thereof was unable to know whether the act charged against her was right or wrong, the jury should find her not guilty. It is said in her brief that it is not contended she was insane.

The law recognizes no form of insanity or uncontrolled impulse or temper, even though the mental faculties are disordered or deranged, which provides immunity from punishment for a criminal act, so long as the person committing the act has capacity to know what he is doing and to understand that his act is wrong. One who has capacity to distinguish between right and wrong with respect to a criminal act at the time of committing it is legally sane. Shannon v. State, 111 Neb. 457, 196 N. W. 635; Williams v. State, 115 Neb. 277, 212 N. W. 606. There is a legal presumption of sanity. There was no attempt by defendant to deny the applicability of the presumption to her. There is no evidence that she could not distinguish between right or wrong. There was no issue of unsoundness of mind of defendant in this case. An instruction on the subject was not tendered. The suggested instruction is contained in the assignment of errors in the brief. Cate v. State, 80 Neb. 611, 114 N. W. 942. This complaint has no merit.

Defendant proposed instructions on the subject of circumstantial evidence. They were rejected. The charge of the court did not advise the jury of the probative value or the manner of measuring or applying this character of evidence. Prejudice is claimed be-

cause of this. The record shows direct and positive evidence on the matters claimed by the State tending to show the guilt of the accused, and she produced the same class of proof to convince the jury of her innocence. "When the existence of any fact is attested by witnesses, as having come under the cognizance of their senses, * * * the evidence of that fact is said to be direct or positive. When, on the contrary, the existence of the principal fact is only inferred from one or more circumstances which have been established directly, the evidence is said to be circumstantial." Black's Law Dictionary, Circumstantial Evidence, p. 328. See, also, 20 Am. Jur., Evidence, § 270, p. 258. It is conservative to say that the greater portion of the evidence of the main facts is direct and not circumstantial.

There is evidence of the State of several admissions of the defendant. Some of these were confirmed, and others were denied by her. Admissions of defendant of facts tending to establish a criminal charge against him are generally considered direct and not circumstantial evidence. The People v. Costello, 320 Ill. 79, 150 N. E. 712; State v. Huff, 353 Mo. 791, 184 S. W. 2d 447; State v. Nortin, 170 Or. 296, 133 P. 2d 252; Annotation, 40 A. L. R. 571.

The absence of any direct or positive incriminating evidence is ordinarily made the test of the obligation of the trial court to give a charge as to the probative value and manner of considering circumstantial evidence in a criminal case. If there is direct incriminatory evidence of the principal facts essential to guilt, the failure to instruct the jury as to this kind of evidence is not error. State v. Shepard, 334 Mo. 423, 67 S. W. 2d 91; Wilson v. State (Tex. Cr.), 225 S. W. 2d 173; State v. Holbrook, 98 Or. 43, 188 P. 947; State v. Quartier, 118 Or. 637, 247 P. 783; Annotation, 15 A. L. R. 1049. The court properly refrained from instructing the jury in this case on the law relative to circumstantial evidence.

The sufficiency of the evidence in chief of the State to justify a submission of the case to the jury was tested by a request of defendant that the court order her acquittal of the charge on trial. The motion was denied. Defendant presents this ruling for review.

The only unlawful act charged against defendant was that she struck and whipped the deceased and thereby caused his death. Defendant says the only evidence that she administered punishment to her child, the deceased, by whipping him, was her alleged admissions to the sheriff after she was arrested and while in his custody, and that the body of the crime charged could not be proven by her extrajudicial admissions. If her premise is correct, the conclusion is well established. A conviction for felony may not be had and will not be sustained when the only evidence of guilt is extrajudicial admissions or a confession of the defendant. Gallegos v. State, 152 Neb. 831, 43 N. W. 2d 1.

The evidence of the State, at the time the ruling was made which is now being considered, was in substance that defendant said to the sheriff that she had whipped the deceased during the period of about a year before his death on an average of about twice a week —"once or twice a week" with a "ruler and a stick" on the seat of his pants during the early months, and thereafter from three to six months by hitting his hands and about his body and face. The stick was a small piece of an orange crate. (The ruler is not in any way described.) The child was disobedient. Talking to him had no effect, and that is why she used a stick. The last time she corrected him was four or five days before his death, as he would not handle his food while he was eating as he should, and she tapped him on the head with a bowl and spoon. She said she would lose her temper on these occasions and would afterwards realize what she had done. At another time the sheriff said he was talking with defendant about employing or selecting an attorney, and she said, "I

told you I was guilty"—"I did this." He asked if she knew it was a manslaughter case, explained it to her three or four times, and told her she had better have a lawyer, and she said, "I told you I was guilty and that I done that."

The sheriff was corroborated as to his version of what was said about the fact and manner of punishment of the boy by the deputy sheriff and a member of the Nebraska Safety Patrol. The sheriff saw the body of the deceased the day of his death, and observed bruises on the body and marks on his hands and face.

A doctor examined the deceased at the hospital the day of his death, about two hours after death, and found abrasions, contusions, and lacerations on the face, neck, arms, chest, and scalp. They were in his judgment of recent origin. He found evidence that deceased had not been healthy, was an extreme case of malnutrition, was emaciated, might have had rickets and been a marasmic, his eyes were sunken, and his stomach protruded.

He was corroborated by the testimony of a doctor who examined the body a few days later, and he told of finding additional injuries on the body. He said the body was about half the size that it should have been for a boy the age of the deceased; that it would have been impossible for him to have fallen and sustained injuries in the places where they were; that external violence was the only logical cause; and he expressed an opinion that repeated whippings of a child may cause an emaciated condition by virtue of nervous reaction and a tendency to prevent the child from eating and enjoying proper digestion. The cause of death, as he believed, was repeated whippings that lowered and destroyed the vitality of deceased.

A pathologist performed a post mortem on the body of deceased on the day after death. He stated that the boy was four years of age, markedly emaciated, weighed 19¼ pounds, when an average weight for

him would have been 40 pounds; he found recent lacerations and cuts on the arms, forearms, and at different places over the dorsal surface, abrasions on the face, buttocks, and scalp, scars over the entire scalp, and marks on the backs of the hands; evidence of extravasation of blood in the tissues of the back of the hands and forearms, and ridging of the fingernails; and some of the fingers showed recent hemorrhage beneath the nail beds. He thought these injuries resulted from external causes. He found no disease of the organs of the body. The scalp was about twice normal thickness, due to a great deal of scar tissue. It showed both recent and old hemorrhage. The scalp of a child is usually very pliable and loose, but in this instance it was firm and cracked easily as reflection was made. These conditions of the scalp were caused by repeated trauma over a period of months. The recent hemorrhage had occurred within a matter of days. It was his opinion that the cause of the death of deceased was repeated trauma to his head over a period of months; that this was responsible for a serious degree of malnutrition; and the two resulted in his death.

Extrajudicial admissions or a voluntary confession is insufficient to prove that a crime has been committed, but either or both are competent evidence of that fact and may, with corroborative evidence or circumstances, establish the corpus delicti and guilty participation of the defendant. Gallegos v. State, *supra*.

An unintentional killing of a person, without malice, resulting from an unlawful assault and battery that in itself is not of a character or intended to cause death may result in the assailant being guilty of manslaughter. § 28-403, R. R. S. 1943; Schluter v. State, 153 Neb. 317, 44 N. W. 2d 588; Rhea v. State, 63 Neb. 461, 88 N. W. 789; State v. Frazier, 339 Mo. 966, 98 S. W. 2d 707; State v. Cobo, 90 Utah 89, 60 P. 2d 952; 40 C. J. S., Homicide, § 58, p. 922.

The same may be true if death, without malice, is

unintentionally caused by immoderate and excessive punishment, under the circumstances existing, although not such as is manifestly dangerous to life, in the correction of a child by a parent. Clasen v. Pruhs, 69 Neb. 278, 95 N. W. 640, states the doctrine that: "A parent, or one standing in the relation of parent, is not liable either civilly or criminally for moderately and reasonably correcting a child, but it is otherwise if the correction is immoderate and unreasonable. * * * It is a question of fact to be determined by the jury whether or not the punishment inflicted was, under all the circumstances and surroundings, reasonable or excessive." See, also, State v. McDonie, 96 W. Va. 219, 123 S. E. 405, 37 A. L. R. 699; State v. Spiegel, 39 Wyo. 309, 270 P. 1064, 64 A. L. R. 289; Betts v. State, 60 Tex. Cr. 631, 133 S. W. 251; Williams v. State, 57 Ga. 478; People v. Green, 155 Mich. 524, 119 N. W. 1087, 21 L. R. A. N. S. 216; Ackers v. State, 73 Ark. 262, 83 S. W. 909; 26 Am. Jur., Homicide, § 202, p. 292.

The evidence of the State and defendant was in direct conflict. Defendant maintained she punished her children moderately and appropriately when she thought it was deserved and required, and that she chastised the deceased less frequently and severely than the older children because of his age and condition. There is substantial evidence, medical and otherwise, that the punishment he was subjected to did not contribute to his death and that he died from causes beyond human power to produce or prevent. It was the province of the jury in this situation to resolve the facts. The determination of the trial court that the evidence required a submission of the case to the jury to decide the guilt or innocence of the defendant of the charge against her was correct, and the contention of the defendant that proof is lacking to authorize or sustain a verdict of guilty must be denied. The credibility of the witnesses and the weight of their testimony was

for the jury to decide, and the conclusion of the jury cannot be disturbed unless it is clearly wrong. Luster v. State, *supra;* Frank v. State, 150 Neb. 745, 35 N. W. 2d 816; Planck v. State, 151 Neb. 599, 38 N. W. 2d 790; Smith v. State, *supra.* The evidence prevents a conclusion that the verdict of the jury is without adequate proof to justify it.

The sentence imposed on defendant of not less than six nor more than seven years is challenged as inappropriate. It is incorrect. The indeterminate sentence law is not applicable. § 29-2620, R. R. S. 1943; Larson v. State, 125 Neb. 789, 252 N. W. 195. The length of the sentence, under the circumstances of this case, is excessive. § 29-2308, R. R. S. 1943. The defendant is the mother of six children. The deceased was her seventh and her youngest child. It is not disputed that she was of good character and reputation. Her conduct was in no way questioned until this case arose. That she was a good wife and mother was not disputed before this prosecution was instituted. She made and kept as good a home as could be done under comparable circumstances. The living accommodations for the family of nine consisted of three rooms without modern facilities. The income of the husband was not in excess of $35.00 a week. She had no assistance in the home. There was a relationship of love and affection between the members of the family. She and the children were together all the time. These facts were attested by several persons who knew and lived near her. None of them knew of any unkindness or improper act towards the children by their mother. The jury recommended that leniency be shown defendant in imposing sentence upon her.

The judgment of the district court should be, and is modified to provide that Gertrude Irene Fisher be confined in the State Reformatory for Women at York, Nebraska, for one year at hard labor, except Sundays and

holidays, and the judgment as modified should be, and it is affirmed.

AFFIRMED AS MODIFIED.

MESSMORE, J., participating on briefs.