JOHN FAGER, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Rape:** EVIDENCE. In a prosecution for rape, it is not essential to a conviction that the prosecutrix should be corroborated by the testimony of other witnesses as to the particular act constituting the offense. It is sufficient if she be corroborated as to material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn.

2. **Trial:** QUESTIONS BY PRESIDING JUDGE. While it is the right of a trial judge to interrogate witnesses when essential to the administration of justice, yet the practice of so doing, except when absolutely necessary, should be discouraged. The common law rule conferring arbitrary power upon trial judges has been so far modified by the code as to greatly limit this power, and, in case of its abuse, a reviewing court would not hesitate to give a new trial to the injured party.

3. ———: ADMISSION OF IMPROPER TESTIMONY. Where it is claimed that improper testimony was allowed to be given to a jury in the trial of a cause, it must appear by the bill of exceptions that objection thereto was made, upon which there was an adverse ruling, and to which exception was taken at the time. Otherwise it cannot be reviewed in the supreme court.

ERROR to the district court for Saline county. Tried below before MORRIS, J.

*E. S. Abbott* and *R. D. Stearns,* for plaintiff in error.

1. Evidence. *Oleson v. State,* 11 Neb., 276. *Laughlin v. State,* 18 Ohio, 99. *Johnson v. State,* 17 Id., 593. 2. Power of trial judge. *State v. Lee,* 80 North Car., 484. *Epps v. State,* 19 Ga., 118. *Shirwin v. People,* 69 Ill., 55. *Fisher v. People,* 23 Id., 283. *Wright v. State,* 69 Ind., 163.

*William Leese, Attorney General,* for the State.

1.  Evidence.  *McCombs v. State,* 8 Ohio State, 643.
*State v. Kinney,* 44 Conn., 153.  *Brown v. People,* 36 Mich.,
204.  *Phillips v. State,* 9 Humph., 246.  *People v. Gage,*
28 N. W. R., 835.   2.  Authority of judge to question wit-
nesses.  *Hill v. State,* 5 B. J. Lea, 730.  *State v. Lee,* 80
N. C., 484.  *Com. v. Galavan,* 9 Allen, 271.  *Palmer v.
White,* 10 Cush., 321.  Wharton Evidence, Secs. 281, 496.

REESE, J.

Plaintiff in error was convicted of the crime of rape.
The record is quite voluminous, and were we inclined to
go outside of the questions presented for decision, it is
quite probable sufficient objection might be found to justify
the reversal of the judgment of the district court, but as
it has been the uniform holding of this court that it will
not travel outside the case presented by counsel, except
when the question of jurisdiction is involved, or in favor
of life, we can notice only the questions presented for
decision.

It is insisted by plaintiff in error that there is no proof
of rape, or even of contact, except that of the prosecutrix.

While this is true in one sense, yet in the sense in which
corroborating circumstances may aid the prosecution it is
not true.  We do not understand the rule in such cases
to require corroborating testimony to the particular fact of
the rape.  If such were required, convictions could seldom
be had, even in the most flagrant cases.  Men engaged in
the commission of offenses of this kind seldom call wit-
nesses to the fact, or attack women who are not alone and
within their power.

The testimony shows that plaintiff in error was engaged
in collecting cream for a creamery in the neighborhood in
which the prosecutrix resided, and that prior to the time
of the alleged crime, when getting cream of a family with
whom the prosecutrix resided, they had met, and knew each

other. The prosecutrix was a girl about 14½ years old, and resided with the family of A. J. Miller. Her younger sister resided near by with the family of C. A. Helms. Miller and his family were away from home, in York county, to be absent, at least, over night. Helms and his wife were also from home and returned late in the evening on which the crime was alleged to have been committed. By the testimony of witness Munson, who resided with Helms, and who was acquainted with the plaintiff in error, it is shown that plaintiff in error went to the house of Helms on the evening in question in a covered buggy, hitched his horse, went to where Mr. Munson was, and asked him where Mr. Miller was? Upon being informed that he was in York county, he then inquired where Iva Smith, the prosecutrix, was? Munson informed him she was there, and in the house. He then told Munson there was to be a party at Mr. Parks' that night, and they wanted her to come down, and requested Munson to see her and inform her of what he said. Munson remarked he did not think she would come, as Miller was "pretty strict with her," but he would tell her.

She was informed, and, after some hesitation, got into the buggy and went with plaintiff in error, going first to Miller's and changing her clothing.

A. J. Miller testified that soon after the occurrence, he, with Mr. and Mrs. Helms and Mr. Munson, went with the prosecutrix to the spot where she claimed the crime had been committed, and there found horse's tracks, south of the road, as she had stated, and, from the appearance of the tracks in the grass, it was evident that the horse had stood there for some little time. These facts are also testified to by others, who observed the same things.

Mr. Helms testified that he was in Dorchester on the afternoon of the day in question, and saw plaintiff in error with a horse of the kind testified to by Munson, hitched to a covered buggy, going north, which was in the direc-

tion in which Mr. Helms lived. This was about half an hour before sundown. Late in the evening, Mr. Helms went home, and, as he supposes, about 9 or 10 o'clock, when within a mile or so of home, he met plaintiff in error in a buggy, driving rapidly to the south. The witness thought at this time that some person was with plaintiff in error in the buggy, but as to who it was, if any such were there, witness could not tell.

Another witness, Mr. J. M. Johnson, met plaintiff in error, the same night, somewhat later, about a mile north of Dorchester, driving south, towards town, with a horse and buggy of the same description as that given by the other witnesses, and, as was the case with Mr. Helms, plaintiff in error did not give the road, and a collision seemed imminent. Mr. Johnson spoke to the horse, and he stopped. Plaintiff in error was alone, and appeared to be asleep. The witness says, " I slapped him on the face with my hat." He said, " There, get out, or pull out." The testimony of these witnesses, all of whom were acquainted with plaintiff in error, when added to the positive testimony of the prosecutrix, who also knew him, leaves no doubt whatever upon the mind as to his identity.

The theory presented by the plaintiff in error is, to the mind of the writer, entirely improbable. He admits that probably it was his horse and buggy, but denies that it was himself. He claims that he started upon an errand, and went some two or three miles out of Dorchester, where he overtook a young man, who claimed he had been at work for a neighbor, and took him into the buggy; that the young man had a bottle of liquor, out of which plaintiff in error took a drink or two, and that upon reaching the timber of the west Blue river he was drunk; that the young man left him there asleep and went away with the horse and buggy. That after a while the young man returned, helped plaintiff in error into the buggy, and sent him home, about midnight.

While this is pressed with considerable ingenuity by counsel, yet we cannot adopt it. The testimony of Munson is clear, direct, and positive, and we can see no reason why it is not entitled to credit.

It is next claimed that the testimony of the prosecutrix, as to what happened at the time of the alleged commission of the offense, is unsatisfactory, and, in some important matters, contradictory. In some respects, this is true, and, indeed, it could hardly be expected to be otherwise. The testimony of this witness occupies 36 printed pages of the record. Her cross-examination was rigid, searching, and of great length, and when coming to minute details of the perpetration of this crime, in her efforts to give details, in answer to the questions, she made some statements which may seem unreasonable. It is hardly probable that a girl of her age and want of experience would form proper conceptions of what was done, or just how it was done, and be able to detail them upon the witness stand without apparent contradictions, resulting from lack of a clear understanding of the question, or some other cause. By a fair analysis of her testimony, however, many seeming contradictions are more apparent than real. The examination-in-chief was not skillfully conducted, many of the interrogatories embodying three or four questions, the last of which was very naturally answered by her, while those preceding it were left unanswered. The order of events was necessarily lost sight of by her, and she was placed in the attitude of answering many questions which might be applied to any stage of the transaction. The cross-examination, of course, tended to increase these apparent discrepancies; but the testimony of the witness throughout, corroborated, as it is, upon many important facts, leaves no question but that the verdict of the jury is sufficiently supported by the testimony, so far as the objections presented by the plaintiff in error attack it.

Before making his statement to Munson, plaintiff in

error seems to have satisfied himself that neither the family of Miller nor Helms was at home. Upon the plausible representations made to her, the prosecutrix accompanied him, as one of her age and lack of judgment might be liable to do.

Whether or not there was a party at the residence of Mr. Parks, neither party seems to have thought it necessary to inquire, perhaps rightly, as no effort was made to reach the place designated. It can hardly be necessary to state here what occurred at the time of the commission of the offense. It is not contradicted, and no good could result from entering upon its narration.

Upon the oral argument, it was insisted that there was error in the case, because the prosecutrix was permitted to testify to the complaint she made to Mrs. Helms, immediately after the alleged offense, upon her return to Mrs. Helms' house. Had the question of the admissibility of this testimony been presented to the trial court by the proper objection and exception to its ruling, if adverse, this question would have been presented for review. But no such objection was made, therefore no ruling or exception, so far as is shown by the record. The examination was made with the consent of the plaintiff in error, and he cannot now object.

These observations apply with equal force to the questions propounded to the prosecutrix by the court, so far as they relate to the testimony of the witness as to the complaint made. No objection was made to any of them. If any error existed it was waived.

At another period in the trial and during the examination of the witness, the court propounded certain questions to her, as to the character of her underclothing, and the exact position of plaintiff in error with reference to her during the occurrence, which were objected to by him upon the grounds: 1st, because the court asks them; 2d, because they were irrelevant, immaterial, and incompetent.

As to the first objection, it must be sufficient here to say that circumstances might arise in which it would be the duty of the court to propound questions and insist upon direct and ' unequivocal answers. It sometimes becomes necessary for the presiding judge to take this course, especially if there is an apparent misunderstanding between the witness and the person propounding the question, or where a witness is diffident, obtuse, or unfriendly, and the simple fact that the questions here referred to were propounded by the court would not of itself be sufficient to reverse the judgment.

As to the materiality, relevancy, or competency of the testimony, there can be no doubt. The question was concerning the condition of the underclothing of the prosecutrix, the principal one of which was as follows: "Were the drawers you wore that night tight drawers?" Answer: "Yes, sir." We can see no good reason why the plaintiff in error can complain of this. The answer was beneficial to him rather than otherwise. Even were the relevancy or materiality of this testimony questionable, it was wholly without prejudice.

The next question presented is as to the conduct of the presiding judge during the trial. The objection is to the course pursued by him in the examination of the witnesses. Questions were asked by him, some of which were upon material points, and somewhat leading at times. This question has not been before this court heretofore, and is one of importance as bearing upon the practice in this state, and also as affecting the authority and duties of the presiding judge. It is insisted that as public prosecutors are provided by law and at public expense, it should be left to them alone to conduct prosecutions without any suggestions from the court; that the prosecuting attorneys of the several district courts are selected by the people with a view to their fitness and qualification for the position, and that it is the spirit of the law that trial

judges leave the matter of presenting testimony entirely in their hands. As a matter of practice in this state, we think the rule generally adopted by the judges has been to avoïd examining witnesses, and to permit the case to go to the jury as made by the attorneys. This of course is subject to the exception above stated, in which case there can be no doubt as to the right and duty of a trial judge. Courts should also see that the examination of a witness is conducted in fairness to both of the litigants, and to the witness. Whether or not a judge has a right to go beyond this under the provisions of our criminal code, might become a serious question. At common law the right was not questioned.

In Wharton Criminal Evidence, 8th Edition, Sec. 452, it is said: "The trial court, at any period of the examination, may put questions to the witness, for the purpose of eliciting facts bearing on the issue, and the witness may even be recalled for this purpose, or a witness not called by the parties may be called and examined by the court; nor is the court, as to evidence, bound by the rule excluding leading questions, but an answer, not in itself evidence, brought out by the questions of the court, may be ground for reversal." This rule has been sustained in *Epps v. State*, 19 Georgia, 102. See also Archibald Cr. Pl., 163. 1st Wharton Evidence, Secs. 281 and 496. *State v. Lee*, 80 N. C., 484.

Assuming that the rule above cited is the correct common law rule, the question arises, has the code so far changed this rule as to require a reversal of the judgment in this case, upon the conduct of the trial judge?

As a matter of law we cannot say that in this case the trial judge so far exceeded the rule which is claimed to have been established by the code as to require a new trial for that cause alone. While it is apparent that the course pursued by the trial judge was not prejudicial to plaintiff in error, yet we deem it proper to suggest that judges have,

to a very great extent, been shorn of the arbitrary power conferred upon them by the common law.

It is not necessary here to refer to that which is known by every student of the law, that at common law the authority of the trial judge was deemed to be absolute, and in many instances was greatly abused. This power has, to some extent at least, been removed by the beneficent provisions and spirit of the criminal code. The trial judge must have the right to superintend the general course of trials of causes before him, as well as the conduct of counsel engaged therein, but this authority should be carefully and moderately exercised. The judge should be so absolutely impartial upon the trial of a cause as to give no ground for suspicion that he has any opinion upon the merits of the cause on trial, and the greatest care should at all times be observed that no act or word should escape which would deprive a judge of the well-earned reputation of American courts for absolute impartiality.

While, as we have said, the conduct of the trial judge to which objection has been made cannot be said to have worked prejudice to plaintiff in error, and does not call for a reversal of the case, yet we think that were a case presented involving the abuse of judicial authority to the prejudice of an unsuccessful litigant, the reviewing court should not hesitate to reverse the judgment, that a fair trial might be had.

The last question presented and urged by counsel for plaintiff in error is, that the punishment imposed is excessive, and for that reason a new trial should be granted. The judgment is, that the plaintiff in error be confined in the penitentiary for the period of 12 years. Under all the circumstances, we agree that the punishment is excessive, but this of itself does not require the granting of a new trial. Under the provisions of an act of the legislature, approved March 31st, 1887, the authority is given directly to the supreme court, in cases of this kind, when,

in its opinion, the sentence is excessive, to reduce the sentence of the district court as in their opinion may be warranted by the evidence. Crim. Code, Sec. 509a. Applying this provision to the case at bar, it is believed that the case requires the exercise of the power conferred, and the sentence of the district court should be reduced to six years.

The judgment of the district court will therefore be so far modified as to reduce the sentence as above indicated, and the judgment will be that plaintiff in error be confined in the penitentiary, at hard labor, but without solitary confinement, for the term of six years from the date of the judgment of the district court. In all other respects the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.

MAXWELL, CH. J.

I concur in the modification of the judgment in this case, and also in the points stated in the syllabus. In my view our statute has changed the common law so far as to practically prohibit the presiding judge from examining the witnesses in whole or in part in a criminal case. Under the common law, as counsel was not allowed to a prisoner in the trial of a charge of felony, the judge was supposed to act as the prisoner's counsel. It became the judge's duty, therefore, to cross-examine the witnesses, and protect the rights of the accused. In this country, however, the common law rule which denied counsel to a person accused of felony has not prevailed, and one of the guarantees of the constitution of the United States and of this state is, that a party accused of crime shall be entitled to counsel to make his defense, and a trial before an im-

partial jury.   A trial cannot be fair and impartial if the judge is permitted, either directly or indirectly, to express an opinion upon the facts.   His opinion necessarily would have great weight with the jury, and as he is not permitted directly to give his views upon the facts he should not be permitted to do so indirectly, either by his conduct or the form of questions to witnesses.   It may be said that in some cases it would be impossible to convict a party unless the judge should bring his influence to bear upon the jury. Such an argument, instead of being in favor of the practice, is directly opposed to it.   Ordinarily, if the facts will justify the jury in finding a verdict of guilty, the probabilities are that they will do so.   If the testimony leaves the guilt of the accused in doubt he is entitled to the benefit of that doubt, and no influence outside of the testimony should be brought to bear upon the jury to induce them to overcome such doubt.   Otherwise, the accused will be deprived of a constitutional guaranty—a fair trial, and perhaps be unjustly convicted.

Our statute prohibits oral instructions to a jury except by consent of parties, and this prevents the judge from directing the jury in any manner, unless in writing in the presence of the parties, where exceptions may be taken to the ruling or direction.   A fair trial means a trial before an impartial jury, who without extraneous influence will be guided by the testimony alone in rendering a verdict.

The law clothes the judge with power to determine the law, and entrusts to the jury all questions of fact; and this division of duties should be recognized and adhered to on a trial.