ELMER DAGGETT V. STATE OF NEBRASKA.

FILED DECEMBER 31, 1925.  No. 24691.

1. **Criminal Law:** INCEST: INSTRUCTIONS: CORROBORATIVE EVIDENCE. An instruction, framed in such language that it may be fairly inferred by the jury, to whom the same is given, that the facts and circumstances necessary to corroborate the testimony of the prosecuting witness, in a prosecution for incest, need not be proved by other witnesses is erroneous.
2. **Witnesses:** IMPEACHMENT. A witness may not be interrogated as to his previous conviction of a crime below the grade of a felony for the purpose of impeachment.
3. ———: ———. Evidence of general reputation that a female witness is, or has been, not law-abiding, unchaste, or a prostitute, is inadmissible for the purpose of impeaching the witness either upon cross-examination or by way of rebuttal; nor can these facts be shown for the purpose of impeachment by evidence as to specific acts or instances.

ERROR to the district court for Dawson county: ISAAC J. NISLEY, JUDGE. *Reversed.*

*W. A. Stewart, N. M. York* and *Pratt, Hamer & Beynon,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort,* contra.

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

In a prosecution by the state in the district court for Dawson county, Elmer Daggett, defendant, was convicted

Daggett v. State.

of incest. For that felony he was sentenced to the penitentiary for a period of not less than 20 years. As plaintiff in error he presents for review the record of his conviction.

One of the errors complained of is an incorporation in instruction No. 8, given by the court, of the words:

"Yet you have no right to reject the testimony of any of the witnesses without good reason, and should not do so until you find it irreconcilable with other testimony you may find to be true."

The defendant was sworn in the district court and positively denied the charge.

The court gave no instruction with respect to the necessity of other evidence to corroborate the testimony of the prosecuting witness, and none was requested by the defendant. However, the use of the words above quoted, in connection with the paragraphs of the instruction in which the quoted words are found, was to advise the jury that they were the "sole judges" of the credibility of the witnesses, of whom the prosecuting witness was one, and of the weight of evidence. It therefore had the effect of a direction of the court to the jury that it had no right to reject the evidence of the prosecuting witness unless it was found irreconcilable with other testimony which the jury found to be true. The true rule would be that the testimony of the prosecuting witness, notwithstanding it may not be irreconcilable with other evidence found by the jury to be true, must be rejected by them if not corroborated by the testimony of other witnesses. The inevitable inference of the words quoted in the connection in which they are used is therefore that the facts and circumstances necessary to corroborate the testimony of the prosecuting witness in a prosecution for incest need not be proved by other witnesses. *Ford v. State,* 106 Neb. 439; *Schrum v. State,* 108 Neb. 186; *Boling v. State,* 91 Neb. 599; *Mott v. State,* 83 Neb. 226. In this the court erred. And so, too, that part of the instruction quoted had a tendency to minimize the benefits to which defendant was entitled in the legal presumption of innocence which attended him during the trial.

For the reasons given, the court, in giving instruction No. 8, committed reversible error.

The state, during the course of the trial, in cross-examination and also by the introduction of evidence in rebuttal, sought to impeach two female witnesses, whose evidence was given in behalf of the defendant, by proving them immoral, unchaste, and prostitutes. The reputation of the witnesses for truth and veracity was not questioned. Evidence was also introduced, however, in the manner stated and over objection (Comp. St. 1922, sec. 8824), to the effect that the reputation of these witnesses as to law-abiding, moral women, and also as to being prostitutes, was bad; that the reputation of the house in North Platte, where the prosecuting witness at one time had resided, was bad; that the witnesses had been convicted and served 15 days in the county jail of Lincoln county on a somewhat indefinite charge of vagrancy. These attempts on the part of the prosecution were wholly unwarranted by law and highly prejudicial to the defendant. "It has been frequently held by this court that a witness may not be interrogated as to his previous conviction of a crime below the grade of a felony." *Ford v. State,* 106 Neb. 439. See, also, *Young Men's Christian Ass'n v. Rawlings,* 60 Neb. 377. In this connection the record plainly indicates that the offense for which these witnesses were convicted could not have amounted to more than a misdemeanor.

The third question presented by this record is whether a female witness may be impeached by the evidence as to her general bad reputation as to being law-abiding, immoral, and a prostitute. As a general proposition it may be stated: "In this country the better doctrine that the trait of veracity only could be considered was early introduced; and this is the rule in the great majority of jurisdictions." 1 Greenleaf, Evidence (16th ed.) sec. 461*a.*

After a review of the authorities cited on the specific point before us, we adopt as our own and quote approvingly, as applied to the question presented, the following language from the case decided in the state of New York in 1837:

Daggett v. State.

"It is only necessary to say that it is perfectly well set-
tled, both in this state and in England, that the general
character of the witness alone can be inquired into for the
purpose of impeaching his credibility; that is, what is his
general character for truth and veracity; or whether his
general moral character is such that he is not entitled to
credit.   But you cannot prove that he has been guilty of
any particular crime, or species of crimes, or immoralities,
or that he has the reputation of being guilty of any partic-
ular class of crimes.   You cannot therefore inquire
whether the witness has the general reputation of being a
thief, prostitute, murderer, forger, adulterer, gambler,
swindler, or the like, although each and every of such of-
fences, to a greater or less degree, impair the moral char-
acter of the witness, and tend to impeach his or her veraci-
ty.   And if a party is not permitted to impeach the wit-
ness by proving that he has the general character of a thief
or a swindler, there can be no good reason why he should
be permitted to impeach the witness by showing a general
reputation of being unchaste.   Indeed, it would be much
safer for a female witness to permit the adverse party to
prove the fact that she was a common prostitute, than to
attempt to impeach her credit by showing it by general
reputation, as there would be some chance of refuting the
charge if it was false, in the one case, when there would
not be any in the other.   Instead, also, of allowing the
chastity of female witnesses to be drawn in question in
that manner, it would be much better to resort at once to
the principles of the Persian, Gentoo, and Mussulman laws,
to which we were referred on the argument, which do not
allow the testimony of any female except in special cases,
where, from the nature of the facts to be proved, it is pre-
sumed that no male witness could have been present."
*Bakeman v. Rose*, 18 Wend. (N. Y.) 146.

A consideration of the more recent cases discloses that
the principles announced in the case of *Bakeman v. Rose*,
*supra*, still obtain.   These principles are that the funda-
mental trait desirable in a witness is a disposition to tell the

truth, and hence the trait of character that should naturally be shown in impeaching him is his bad character for veracity; that general reputation as impeaching evidence should be limited to that subject; that neither by way of cross-examination or by rebuttal may witnesses be impeached because of alleged bad reputation as to being law-abiding, immoral persons, or as affording a basis for the inference that they have been or now are prostitutes. Nor can evidence of specific instances of bad conduct, with reference to the subjects mentioned, be shown for impeaching purposes only. *Myers v. State,* 51 Neb. 517; *State v. Stimpson,* 78 Vt. 124, 1 L. R. A. n. s. 1153; *People v. Abbott,* 97 Mich. 484; *Spearman v. State,* 68 Tex. Cr. Rep. 449, 44 L. R. A. n. s. 243.

The district court therefore erred in admitting the evidence of the prosecuting witness both upon cross-examination and in rebuttal. The case is therefore reversed and remanded for further proceedings.

                                        REVERSED.