BENITO GARCIA, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

68 N. W. 2d 151

Filed January 14, 1955. No. 33612.

572

*Charles A. Fisher,* for plaintiff in error.

*Clarence S. Beck, Attorney General,* and *Robert A. Nelson,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an error proceeding from the district court for Sioux County. A jury therein found Benito Garcia, petitioner in error and defendant below, guilty of murder in the first degree and fixed the penalty at life imprisonment in the penitentiary. The trial court imposed sentence accordingly and, from the overruling of his motion for a new trial, defendant brought this proceeding. We shall herein refer to Garcia as defendant.

The information filed by the State charged that on July 18, 1953, defendant committed murder in the first degree by killing Edwardo Zamora while in the act of robbing him. The charge was made under and pursuant to the provisions of section 28-401, R. R. S. 1943.

Defendant contends the evidence produced was not sufficient to prove his guilt beyond a reasonable doubt. We think, from the evidence adduced, the jury could find, beyond any reasonable doubt, that during the afternoon of July 18, 1953, the deceased, defendant, and one

Salvador Martinez Gutierez left Morrill, Nebraska, in the deceased's car; that they drove to an irrigation ditch in Sioux County for the purpose of taking a bath in the waters of the ditch; that while pretending to prepare to take his bath the defendant seized the deceased; that while the deceased was being held by defendant, Gutierez robbed him of his wallet, or pocketbook, and his automobile keys; that after robbing him defendant beat the deceased about the head, first with a board and later with a length of two-by-four; that such beatings caused severe contusions or bruises about the head, a fracture of the skull at its base, and injury to the brain; that such beatings resulted in the deceased becoming unconscious; that the deceased, while in this unconscious condition, was thrown into the waters of the irrigation ditch; and that because of his unconscious condition he drowned.

As stated in Pumphrey v. State, 84 Neb. 636, 122 N. W. 19, 23 L. R. A. N. S. 1023: "Homicide committed in the perpetration of a robbery is murder in the first degree, and in such a case the turpitude of the act supplies the element of deliberate and premeditated malice."

Both defendant and Gutierez admitted the robbery but each accuses the other of actually doing the acts which resulted in Zamora's death. But this gives neither any relief for each is, under such circumstances, responsible for the acts of the other. Section 28-201, R. R. S. 1943, provides: "Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender."

Besides questioning the sufficiency of the evidence adduced, which contention we find to be without merit, defendant contends many errors occurred during the course of the trial which were prejudicial to his rights and prevented him from having a fair trial.

Defendant contends that the trial court erred in the admission of certain evidence after proper objections thereto had been made. The first of these relates to

certain questions asked of and answered by defendant relating to when he had been in jail in Laredo, Texas. On redirect, in reference to a statement he had given while in jail and which was in evidence, defendant's counsel asked him, "Now, when you were in jail there all the time, the very fact that you were in jail made you afraid, did it not?" He replied, "Yes, sir." Thereafter, on recross, defendant was asked, "Well, you have been in jail, off and on, in Laredo, Texas since you were 17 up to 1951 at least nine times?" He replied, "The last time I was in jail was about three years ago." He then was asked the following questions: "Q. So you are not afraid of jails, are you? A. Yes, sir; I am afraid of them. Q. Do you mean to say that being in jail makes you afraid? * * * A. No, sir; * * *."

There had also been a question raised as to defendant's age. He testified he was 29 at the time whereas in his statement taken on August 5, 1953, he stated he was 27. This was apparently done for the purpose of affecting the credibility of Julian W. Lopez, who acted as interpreter in taking defendant's statement, and to thereby discredit his signed confession. Defendant did not understand or speak the English language with any degree of fluency and an interpreter was necessary to converse with him. In that respect the following questions were asked on cross-examination of defendant and he replied thereto as herein set forth: "Q. All right. Now, I am going to ask you again if you had a conversation with the Chief of Detective in Laredo, Texas on March 5, 1951, and if at that time you did not tell him that you were 25 years of age? * * * A. I don't remember because that is about three years ago. Q. All right. Did you have a conversation with the Chief of Police of Laredo on June 20, 1943 at his office in which you talked about your age? * * * A. I don't remember. * * * Q. I will ask you if on that date, June 20, 1943, you told the Chief of Police of Laredo, Texas, in his office that you were 17 years of age. * * * A. I don't remember."

There were other questions of a like character.

Section 25-1214, R. R. S. 1943, provides: "A witness may be interrogated as to his previous conviction for a felony, but no other proof of such conviction is competent except the record thereof."

As stated in Leo v. State, 63 Neb. 723, 89 N. W. 303: "The scope and effect of this section is to allow the witness to be interrogated as to whether he has before been convicted of a felony, calling his attention thereto, so that he may make admission thereof, or the introduction of the record of such conviction in evidence."

And in Daggett v. State, 114 Neb. 238, 206 N. W. 735, we said: " 'It has been frequently held by this court that a witness may not be interrogated as to his previous conviction of a crime below the grade of a felony.' Ford v. State, 106 Neb. 439." See, also, Y.M.C.A. of Lincoln v. Rawlings, 60 Neb. 377, 83 N. W. 175; Dunlap v. State, 116 Neb. 313, 217 N. W. 89; Crawford v. State, 116 Neb. 629, 218 N. W. 421.

But nowhere in the record can we find any question asking about defendant's having been previously convicted of a felony or of a crime below that grade; namely, a misdemeanor.

It is also improper for a prosecutor to state that the defendant in a criminal prosecution has committed or been charged with committing some other crime. In Balis v. State, 137 Neb. 835, 291 N. W. 477, we said: "Such remarks are so inflammatory and prejudicial to the rights of the accused that the efficient effort of the trial court to overcome it by instructions to the jury to disregard it is without avail." See, also, Leo v. State, supra; Elliott v. State, 34 Neb. 48, 51 N. W. 315; Wehenkel v. State, 116 Neb. 493, 218 N. W. 137.

We find nothing in the record to show that either the county attorney or the special prosecutor authorized by the court violated this principle.

The only thing that can be said of the questions asked is that inferentially they indicate defendant was prob-

ably charged with some offense or otherwise he would not have been in jail.

The rule is that one charged with a crime, who becomes a witness in his own behalf upon his trial, is subject to the same rules that govern other witnesses upon cross-examination and may, on cross-examination, be interrogated as to matters brought out on direct examination. See, Crawford v. State, *supra;* 3 Wharton's Criminal Evidence (11th ed.), § 1303, p. 2174; 3 Jones, Evidence (4th ed.), § 821, p. 1519.

In this respect we have said: "Where a defendant in a criminal case testifies in his own behalf, he is subject to the same rules of cross-examination as any other witness, and may be required to testify on his cross-examination as to any matters brought out or suggested by him on his direct examination, and ordinarily he cannot avail himself of the objection that the evidence may incriminate him." Poston v. State, 83 Neb. 240, 119 N. W. 520.

And in Peterson v. State, 63 Neb. 251, 88 N. W. 549, we said: "The scope of the cross-examination of a witness rests largely in the trial court, and its ruling will be upheld, unless an abuse of discretion is shown." See, also, Griffith v. State, 157 Neb. 448, 59 N. W. 2d 701.

We think the questions asked by the State sufficiently related to matters brought out by counsel for defendant on his direct and redirect examination of defendant that they were entirely proper.

To clarify for the jury the purpose for which this evidence was admitted, the court gave instruction No. 12, which is as follows:

"The defendant said in effect, that he was scared from being in jail. Because of this evidence it was proper for the State to cross-examine the defendant on this subject in relation to any previous experience. If the defendant was in jail previously, is of itself absolutely immaterial in this case and no unfavorable inference can be drawn by you as against this defendant by

any such implication from the questions asked or any answers. The only purpose of this evidence is to assist you in determining if the defendant was scared from being in jail. You must give it no other consideration or meaning, and you should ignore it entirely unless it does assist you in that regard.

"There was also some cross-examination of the defendant as to his age and statements made by him as to his age to law enforcement officers. No implication can be drawn by you as against this defendant from the fact that the questions referred to law enforcement officers. The only purpose for which such reference was permitted, was to fix the time and place of the claimed statements with reference to defendant's age."

This instruction properly and correctly informed the jury of the limited purpose for which this evidence was received. The court was not in error in doing so. It fully and fairly protected defendant's rights.

In this regard we have not overlooked the following questions asked by the State in cross-examining the defendant and the answers he gave thereto: "Q. On March 5, 1952, did you have a conversation with the Chief of Detectives in the detectives bureau in Laredo, Texas? * * * A. I was locked up three months because I could not pay the money they asked me. * * * Q. The question is, did you ever have a conversation or a talk with the Chief of Detectives on that day? * * * A. No, sir; they lock me in."

The answer to the first question was stricken as not being responsive thereto and the same is true of the answer to the second question except the words, "No, sir." These rulings were correct in view of what we have already said. The questions related to foundation. They were for the purpose of finding out if a conversation had taken place on that day between defendant and the chief of detectives in Laredo, Texas. The questions were entirely proper and we find nothing wrong in their being asked. Merely because defendant made irrespon-

sive answers thereto did not make them erroneous.

Defendant further contends that it was error to permit Steven Warrick, sheriff of Scotts Bluff County, to testify to conversations he had with the defendant and Gutierez through an interpreter. Neither defendant nor Gutierez was able to read or write the English language nor could either understand or speak it with any degree of fluency. Consequently it was necessary for the sheriff to converse with them by means of an interpreter. The sheriff used Julian W. Lopez for this purpose. The claim is that such conversations were hearsay and therefore inadmissible.

We think the correct rule is that the testimony of a witness as to a statement made by another person is hearsay when he understood it, not as originally given, but as translated by an interpreter not then under oath. See, 22 C. J. S., Criminal Law, § 720, p. 1232; 16 C. J., Criminal Law, § 1235, p. 624; Indian Fred v. State, 36 Ariz. 48, 282 P. 930.

As stated in State v. Terline, 23 R. I. 530, 51 A. 204, 91 Am. S. R. 650: "While it is true that the interpretation of the words of a witness testifying in a foreign language by one who is sworn in court and translates the testimony to the tribunal is not obnoxious to the hearsay rule, because both the original witness and the interpreter are under oath and subject to cross-examination, yet where a witness is offered to testify to the statements of another person spoken in a language not understood by him but translated for him by an interpreter, such witness is not qualified, because he does not speak from personal knowledge."

The record discloses that the court sustained objections made on this basis and the witness was permitted to testify only with reference to such answers as were given in English or where answers were made by signs or actions. We think the trial court was correct in doing so. It should here be stated that the first few objections made on this basis were overruled and the wit-

ness was permitted to answer. The trial court, as to these rulings, was in error but since the answers related to immaterial matters no prejudice resulted therefrom.

Defendant further contends the trial court erred in rejecting certain evidence. This contention relates primarily to the trial court's exclusion of evidence offered by defendant to show that while Gutierez was being held in jail at Chadron he did, about 2 a. m. on October 8, 1953, commit an assault upon another person then confined therein by hitting him over the head with a piece of wood he had broken off a chair. The name of the other person is Emil Comes Last. It should here be stated Gutierez had been charged with the same offense as the defendant and at the time the foregoing occurred he was being held in jail at Chadron awaiting trial on this charge.

Defendant, as a basis for this contention, apparently relies on the principle stated in Bartlett v. State, 115 Neb. 148, 211 N. W. 994, that: "* * * it is proper to admit evidence in respect of the conduct of an accused person while in jail awaiting trial. King v. State, 108 Neb. 428. See, also, 16 C. J. 554, sec. 1071; State v. Clark, 166 Ia. 123." See, also, 22 C. J. S., Criminal Law, §§ 629, 631, p. 965.

This type of evidence would be, under circumstances such as here, admissible against an accused whose guilt or innocence is in issue in a trial. It would be admissible in the trial of Gutierez if offered by the state. We are unable to find any authority that it may be admitted against a witness in the case even though an accomplice. Insofar as the trial herein involved is concerned it related to a collateral matter and the court properly excluded it.

Defendant also complains of the fact that the trial court refused to let him show his counsel, because of his poverty, was appointed by the court. We think the trial court was correct in doing so for the manner in which defendant obtains counsel is not material to the issue of

his guilt or innocence as long as he is properly represented.

Defendant complains of several instructions given by the court. He complains of the use of the word "casual" in instruction No. 6, claiming it should have been "causal." This instruction is as follows: "You are instructed that in order to establish that a homicide was committed in the perpetration of a robbery it is not necessary for the State to prove that the homicide was committed before or during the actual robbing from the person killed; a homicide is committed in the perpetration of robbery if it is committed in the Res Gestae of the robbery; that is, if the initial crime of robbery and homicide were closely connected in point of time, place and *casual* relation, and were parts of one continuous transaction. It is for the jury to determine from the facts and circumstances in evidence: if these, and all the other essential elements in the case exist, and the same must be established by the State beyond a reasonable doubt." (Emphasis ours.)

Section 28-401, R. R. S. 1943, under and pursuant to which the charge was here made, provides: "Whoever shall purposely and of deliberate and premeditated malice or in the perpetration of or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill another; or, whoever by willful and corrupt perjury or subornation of the same, shall purposely procure the conviction and execution of any innocent person, every person so offending shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death or shall be imprisoned in the penitentiary during life, in the discretion of the jury."

In MacAvoy v. State, 144 Neb. 827, 15 N. W. 2d 45, we said: "The defendant urges, however, that the killing occurred after the act of sexual intercourse took place and, consequently, it was not a killing in the perpetration of a rape. There is no merit in this argument.

If a killing is committed within the res gestae of the felony charged it is committed in the perpetration of, or attempt to perpetrate, the felony, within the meaning of the statute." See, also, Francis v. State, 104 Neb. 5, 175 N. W. 675.

In Collins v. State, 46 Neb. 37, 64 N. W. 432, we defined res gestae as: "The term 'res gestae' means things done in and about, and as a part of, the transaction out of which the litigation in hand grew and on which transaction said litigation is based."

And in Sullivan v. State, 58 Neb. 796, 79 N. W. 721, we held: "A declaration may be a part of the res gestae without being precisely coincident with the main transaction. It is sufficient that there was between the two an immediate casual relation, and that the statement was a spontaneous characterization of the act."

We find the instruction comes within the holdings of this court. We do not think the act done necessarily needs to be the cause of the death. It is sufficient if death occurs unexpectedly and without design if it occurs while the party or parties charged are in the perpetration of, or an attempt to perpetrate, one of the acts set out in the statute.

Defendant also complains of the court's instruction No. 13, contending his requested instruction No. 12 should have been given. The court's instruction No. 13 is, for all intents and purposes, the same as defendant's requested instructions Nos. 2 and 3. Instruction No. 13 is as follows: "An accomplice is one culpably implicated in the commission of the crime with which a defendant is charged. By his own testimony, Salvador Martinez Gutierez is an accomplice in this case. While it is a rule of law that a person accused of a crime may be convicted upon the testimony of an accomplice, still, a jury should always act upon such testimony with great care and caution, and subject it to careful examination, and scrutiny, in the light of all the circumstances and all the other evidence in the case, and the jury ought not

to convict upon the testimony of an accomplice alone unless after a careful examination of such testimony, they are satisfied beyond a reasonable doubt of its truth and that they can safely rely upon it, but if after careful consideration, and scrutiny, and all the circumstances, such testimony, together with the other evidence in the case, satisfies the jury of the defendant's guilt, beyond a reasonable doubt, then the jury should so find and return in their verdict."

The rule is: "A conviction may rest on the uncorroborated evidence of an accomplice when, considered with all the testimony and circumstances, it satisfies the jury beyond a reasonable doubt of the guilt of the accused." Ruzicka v. State, 137 Neb. 473, 289 N. W. 852.

We have also said: "The evidence of an accomplice should be closely scrutinized. If it appears that such witness has willfully sworn falsely in regard to a material matter upon the trial, his evidence can not be sufficient, if uncorroborated, to support a verdict of guilty." Jahnke v. State, on rehearing, 68 Neb. 181, 104 N. W. 154.

Defendant's tendered instruction is drafted on the principle stated in Jahnke v. State, *supra*. We think, under the factual situation presented, the instruction given by the court was correct.

Defendant complains of instruction No. 10 given by the court. Instructions Nos. 10 and 11 given by the court deal with the same subject; that is, statements or admissions made by the defendant and advises the jury when such statements may be considered by them and, if to be considered, how they are to be considered. Admittedly instruction No. 11 correctly does so but defendant contends No. 10 does not. The only error complained of in No. 10 is that it does not put in proper sequence the jury's duty in this regard; that is, it must first determine whether the statement or admission was, in fact, voluntary and then, if it determines it was voluntary, whether the statement or admission correctly

reflected what the defendant said or meant and, if so, the credence and weight it deems it is entitled to be given. Although it would have been better to have given only instruction No. 11 in advising the jury as to how to consider the admissions or statements of defendant, as it included everything covered by No. 10, we do not think the jury could possibly have been mislead thereby as instruction No. 10 deals with only a part of the subject which is fully covered by instruction No. 11.

We think the following have particular application to the foregoing situation:

"Where the charge to the jury, considered as a whole, correctly states the law, the verdict will not be reversed merely because a single instruction, when considered separately, is incomplete." Kirkendall v. State, 152 Neb. 691, 42 N. W. 2d 374.

"Where instructions, considered as a whole, state the law fully and correctly, error will not be predicated thereon merely because a separate instruction, considered by itself, might be subject to criticism." Fullerton v. State, 148 Neb. 811, 29 N. W. 2d 618.

Defendant also complains of instruction No. 14 given by the court. This instruction advised the jury as follows: "You are instructed by the court that *you are the sole judges of the credibility of the evidence and every part thereof and of the weight to be given to the same.* In determining the value of the testimony of the witnesses you should take into consideration their interest, if any, in the result of the suit; their conduct while testifying; their apparent fairness or unfairness; their opportunities for seeing or knowing the things about which they testify; the reasonableness or unreasonableness of the statements made by them; and all the facts and circumstances proved at the trial tending to corroborate or contradict such testimony.

"Where there is a conflict of testimony it is for you to say who are the more worthy of belief. You are not

bound to take the testimony of any witness, or any evidence, as absolutely true, and you should not do so if you are satisfied from the facts and circumstances proved in the trial that such witness is mistaken in a matter testified to by the witness, or that, for any other reason, the testimony of such witness, or such evidence, is untrue or unreliable." (Emphasis ours.)

The complaint relates to that part which we have emphasized. Defendant contends it should have read: You are the sole judges of the credibility of the witnesses and the weight to be given their testimony.

We think the defendant is correct for as we said in Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349: "The credibility of the witnesses and the weight of their testimony was for the jury to decide, * * *."

As stated in Chezem v. State, 56 Neb. 496, 76 N. W. 1056: "Unquestionably jurors are to determine for themselves the credit to be given witnesses, and the weight to be accorded their testimony."

Other than the sentence referred to we think the instruction as a whole correctly stated the law and we do not think the jury could possibly have misunderstood its duty in this regard. The following principles have application to a situation such as this:

"Whether an instruction to the jury is a correct statement of law applicable to the issues must be determined from an examination of the whole charge to the jury, and not from an isolated sentence in a single instruction." Browne v. State, 115 Neb. 225, 212 N. W. 426.

"Where instructions, considered as a whole, state the law fully and correctly, error will not be predicated therein merely because a separate instruction, considered by itself, might be subject to criticism." Kirkendall v. State, *supra*.

"Instructions should be considered together in order that they may be properly understood, and when, as an entire charge, they properly submit the issues to the jury, the verdict will not be set aside for harmless

error in one of them." Blanchard v. Lawson, 148 Neb. 299, 27 N. W. 2d 217.

By his requested instructions Nos. 5 and 9 defendant asked the court to submit the lesser offenses of manslaughter, assault and battery, and assault. This the trial court refused to do. Defendant complains of this refusal as follows: "However we do state that wherever an information as here charged the specific assault and battery by specific means, that even though it charged murder in the perpetration of a robbery by charging the specific means, that is by striking and beating with a club, by pushing in the water, that that was such a specific charge of a lesser crime that it should have been instructed upon, and that whereas in the present case the information so charged and the proofs so corresponds with that, that it was error not to instruct on the lesser degrees of murder in the second degree, manslaughter and assault and battery. All of these were requested by the defendant and the court failed to give them."

We said in Pumphrey v. State, *supra*: "Homicide committed in the perpetration of a robbery is murder in the first degree, and in such a case the turpitude of the act supplies the element of deliberate and premeditated malice." See, also, Swartz v. State, 118 Neb. 591, 225 N. W. 766; Morgan v. State, 51 Neb. 672, 71 N. W. 788.

And, in a situation such as here, we held in Thompson v. State, 106 Neb. 395, 184 N. W. 68: "An information charging defendant with a homicide committed in the perpetration of or attempt to perpetrate a robbery, under section 8581, Rev. St. 1913 (now section 28-401, R. R. S. 1943), charges only murder in the first degree, and it is error for the trial court to instruct the jury that they may find defendant guilty of murder in the first degree, guilty of murder in the second degree, or guilty of manslaughter." See, also, Morgan v. State, *supra;* Davis v. State, 116 Neb. 90, 215 N. W. 785.

Defendant also complains of the court's failure or

refusal to give several instructions that he requested. The first of these deal with requested instructions Nos. 8 and 10. They are cautionary instructions relating to the testimony of law enforcement officers and witnesses employed by the State.

As to the witness Steven Warrick, sheriff of Scotts Bluff County, the rule is as follows: The mere fact that a witness in a criminal prosecution is a regular public law enforcement officer does not entitle an accused to an instruction that the jury, in weighing his testimony, should exercise greater care than in weighing the testimony of other witnesses. See, Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349; Koch v. State, 130 Neb. 119, 264 N. W. 172.

But defendant contends Lopez was an informer, investigator, and undercover man who was hired and paid to look up testimony and testify against the defendant. Under these circumstances he contends the following has application: "Where informers, detectives, or other persons employed to hunt up testimony against the accused, are called to testify against him, he is entitled to an instruction to the jury that in weighing their testimony greater care should be exercised than in the case of witnesses who are wholly disinterested." Sandage v. State, 61 Neb. 240, 85 N. W. 35, 87 Am. S. R. 457.

There is absolutely nothing in the record to support this claim of the defendant. The record is clear that the only work performed by Lopez for the sheriff was that of an interpreter and that he was hired and paid solely for such services. Under the facts of the case the court properly refused to give these instructions.

We think defendant's requested instructions Nos. 7 and 11 were substantially covered by instructions given. In this situation the following principle has application: "When instructions requested are substantially given in the charge prepared by the court on its own motion it is not error to refuse to repeat them though expressed in language different from that used by the court."

Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N. W. 2d 680.

Defendant contends the trial court abused its discretion in limiting and directing the mode and manner of direct and cross-examination, in questions asked, in remarks made during the trial, and by interference with the cross-examination of Gutierez by defendant's counsel. We shall deal with the latter separately.

It is, of course, true that a trial judge should so conduct his court in a criminal trial that the accused will have a fair and impartial trial. In this respect we have said:

"Trial judges and public prosecutors are charged with the duty of conducting criminal trials in such a manner that the accused may have a fair and impartial trial, uninfluenced by prejudice, passion and public clamor." Cooper v. State, 120 Neb. 598, 234 N. W. 406.

"The trial judge must have the right to superintend the general course of trials of causes before him, as well as the conduct of counsel engaged therein, but this authority should be carefully and moderately exercised. The judge should be so absolutely impartial upon the trial of a cause as to give no ground for suspicion that he has any opinion upon the merits of the cause on trial, and the greatest care should at all times be observed that no act or word should escape which would deprive a judge of the well-earned reputation of American courts for absolute impartiality." Fager v. State, 22 Neb. 332, 35 N. W. 195. Therein we also said: "While it is the right of a trial judge to interrogate witnesses when essential to the administration of justice, yet the practice of so doing, except when absolutely necessary, should be discouraged. * * *." See, also, Leo v. State, supra; Culver v. Union P. R. R. Co., 112 Neb. 441, 199 N. W. 794.

"The trial judge during the course of a trial should refrain from remarks that are calculated in any way

to influence the minds of the jury." Moore v. State, 147 Neb. 390, 23 N. W. 2d 552.

"Such partial remarks must be avoided by the trial judge, for it is a well-known fact that jurors are usually alert to discover the attitude of the court respecting the merits of the case, and particularly in criminal cases." Hansen v. State, 141 Neb. 278, 3 N. W. 2d 441.

Numerous times during the course of the trial, while defendant's counsel was questioning witnesses through an interpreter, the court allowed the special prosecutor to ask questions of the interpreter. It appears the special prosecutor was conversant with the language of the witnesses. This questioning was permitted for the purpose of ascertaining whether the statements made by the witnesses were being properly translated by the interpreter.

When the testimony of a witness is presented through an interpreter we think either party should be permitted to show error, if it exists, in the translation made by the interpreter of a witness's answer. For this purpose the trial court may properly allow opposing counsel to interrupt the proceedings for the purpose of cross-examining the interpreter in order to determine the correctness of his translation for to wait until the examination has been completed would often defeat the very purpose thereof.

We find no merit to this contention. We think the record shows the trial court so conducted the trial that the defendant had a fair and impartial trial.

Defendant also contends the special prosecutor was guilty of such misconduct as requires a reversal of this case, claiming the record shows he was out to get a conviction and was not too careful about the means of procuring it. We have said: "Prosecutors are not partisans against the accused, and should handle all prosecutions without bias or prejudice as between the public and the defendant." Plessman v. State, 130 Neb. 758, 266 N. W. 629.

" 'It is the duty of the prosecuting attorney to conduct the trial in such a manner as will be fair and impartial to the rights of the accused, no matter how guilty, in his opinion, defendant may be; and this rule applies to special counsel assisting the prosecuting attorney.' 16 C. J. 886." Cooper v. State, *supra*. See, also, Bailey v. People, 54 Colo. 337, 130 P. 832, 45 L. R. A. N. S. 145, Ann. Cas. 1914C 1142; State v. Haney, 222 Minn. 124, 23 N. W. 2d 369; 23 C. J. S., Criminal Law, § 1081, p. 519.

As stated in State v. Haney, *supra:* "An accused, whether guilty or innocent, is entitled to a fair trial, and it is the duty of the court and of prosecuting counsel as well to see that he gets one. There must be no conduct, either by argument or by the asking of irrelevant questions, the effect of which is to inflame the prejudices or excite the passions of the jury against the accused."

We have examined the record carefully with this contention in mind and cannot arrive at the same conclusion as defendant's counsel. It is true that the case was vigorously prosecuted but it was done without bias or prejudice. Nor can it be said the conduct of either the special prosecutor or county attorney was such that it would have any tendency to inflame the prejudices or excite the passions of the jury against the accused.

Defendant complains of the trial court's failure to enforce compulsory service on, and attendance of, Emil Comes Last, an inmate of the Nebraska penitentiary.

Defendant filed an application and showing for compulsory process and attendance of certain witnesses, including Emil Comes Last, and secured an order of the court for such compulsory process, which order was filed in the office of the clerk of the court on February 9, 1954. This was done pursuant to and under the authority of section 29-1903, R. R. S. 1943. A subpoena was thereupon issued for the witness Emil Comes Last, returnable February 10, 1954. This was mailed to the sheriff of Lancaster County, Nebraska, and was received by him on February 15, 1954. The subpoena was re-

turned without being served accompanied by a letter from the Lancaster County sheriff stating that it could not be served because the return date had passed at the time it was received and further stating that if another set of papers were issued with a proper date he would be glad to serve the same.

It is apparent that the purpose of requesting the attendance of this witness was to have him testify to the altercation he had with Gutierez while they were both being held in the county jail at Chadron. The trial court was of the opinion that the testimony of this witness was incompetent and so advised counsel. We have confirmed this ruling and consequently the witness properly would not have been permitted to testify thereto if present. Therefore no prejudice resulted from his not being present.

Defendant contends that by reason of Amendment VI to the Constitution of the United States; Article I, section 11, Constitution of the State of Nebraska; and section 29-1903, R. R. S. 1943, he was entitled to compulsory service on and attendance of this witness, even though he was in the penitentiary. On the other hand the State claims, under the factual situation here, that section 25-1233, R. R. S. 1943, has application and the witness's testimony could only be obtained by deposition. This statute provides: "A person confined in any prison in this state may, by order of any court of record, be required to be produced for oral examination in the county where he is imprisoned; but in all other cases his examination must be by deposition."

Whether or not this statute applies only to civil cases or, if to criminal cases, it is unconstitutional because of the constitutional provisions hereinbefore referred to, we do not decide. After the sheriff of Lancaster County returned the original subpoena without being served, stating his reason for not doing so, another set of papers was never issued. Consequently service was never had and the question of whether or not those in

charge of the witness would have let him attend the trial was never raised. Until a situation arises where, after service is had, those in charge of the penitentiary refuse to permit the witness to attend this question is not properly here for our determination.

Defendant contends the direct and cross-examination of the witness Gutierez shows that he was of unsound mind and for that reason his testimony was incompetent and all of his testimony should have gone out. See § 25-1201, R. R. S. 1943.

In State v. Meyers, 46 Neb. 152, 64 N. W. 697, 37 L. R. A. 423, we said: "One who by reason of insanity or imbecility is unable to comprehend the obligation of an oath, or to understand and intelligently answer the questions put by the court upon a voir dire examination, is, under the provisions of section 328, Code Civil Procedure, (now section 25-1201, R. R. S. 1943), incompetent to testify as a witness."

We therein went on to say, quoting from Davis v. State, 31 Neb. 247, 47 N. W. 854, that: "The question of competency of a person to be a witness must be left to the sound legal discretion of the trial judge, leaving to the jury to determine the credit that ought to be given to the testimony."

As stated in Fisher v. State, *supra:* "The credibility of witnesses and the weight of their testimony are for the jury to determine in a criminal case, and the conclusion of the jury cannot be disturbed unless it is clearly wrong."

Gutierez, an accomplice who was with the defendant when the crime was committed, took the witness stand shortly before the noon hour on Wednesday, February 10, 1954. The State finished with his direct examination during the course of the afternoon and he was turned over to the defendant for cross-examination. He was cross-examined by defendant's counsel for the balance of that day, all day Thursday, February 11, 1954, and all day Friday, February 12, 1954. The evidence shows

that the witness slept very little, if any, during the night preceding Friday and that he prayed most of the night, and that on Friday, during the lunch hour, someone handed him a rosary which he put on and wore. Shortly after his return to the stand on Friday, following the lunch hour, it is apparent the witness became emotionally upset and that his responses to questions dealt with matters foreign thereto. In this situation the court, on Saturday morning, February 13, 1954, permitted the State to endorse on the information and call as a witness one E. V. Garcia. This witness had studied the religious customs of the witness's people and described them. It thereby became apparent that in his highly emotional condition of Friday afternoon, brought about by the various factors already described, that Gutierez' conscience was bothering him and that he was going back to the religious training of his youth. On Monday, February 15, 1954, when Gutierez returned to the stand he was again normal and his answers rational, the same as they had been prior to his temporary emotional upset on Friday afternoon. We do not think the trial court abused its discretion in permitting Gutierez to continue to be a witness under these circumstances.

Defendant also complains of the trial court's actions in permitting E. V. Garcia to testify and in permitting a recess, as far as the witness Gutierez was concerned, from Friday afternoon to Monday morning.

When a witness, while testifying, becomes ill, either from physical or mental exhaustion, or both, it becomes not only the right but the duty of the trial court to grant a reasonable adjournment or permit the witness to be withdrawn for a reasonable length of time so that, if possible, he may sufficiently recover to resume the stand. That is exactly what the trial court did.

Also when the witness started referring to matters, which, if unexplained, might mislead the jury it was proper for the State to call a witness for the purpose of explaining them. This testimony of the witness could

not reasonably have been anticipated beforehand so it was perfectly proper for the court to permit the State to call a witness for that purpose and to permit the endorsement of his name on the information. We think this matter was properly handled and done in a manner that fully protected all of defendant's rights.

We find that none of defendant's contentions are of such a nature as to require a new trial. We have come to the conclusion that the defendant had a fair and impartial trial and therefore affirm the verdict of the jury and the sentence imposed on defendant by the court in accordance therewith.

AFFIRMED.

CHAPPELL, J., participating on briefs.